## GOLDSTEIN *v.* STATE

[No. 217, September Term, 1958.]

*Decided May 8, 1959.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Max Sokol,* with whom was *Emanuel H. Horn* on the brief, for appellant.

*Clayton A. Dietrich, Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General, J. Harold Grady, State's Attorney for Baltimore City,* and *John A. O'Connor, Jr., Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a judgment and sentence of Hyman Goldstein, commanding officer of the Enforcement Unit, Rackets Division of the Baltimore City Police Department, to serve three years in the Maryland House of Correction after his conviction by a jury on a charge of suborning Herbert Meekins and Charles Richter, police officers under his command, to perjure themselves as prosecuting witnesses in the lottery case of *State v. Taylor,* tried June 28, 1957, in the Criminal Court of Baltimore.

The appellant does not challenge the sufficiency of the evidence to support the conviction, but relies upon the four alleged errors in the rulings of the trial court: (1) that the court improperly limited the scope of examination of prospective jurors upon their *voir dire,* (2) that the court improperly denied a motion for continuance, (3) that the court erred in its instructions to the jury, particularly on burden of proof, and (4) that the court improperly overruled a challenge to the array based on a handbook furnished to the jurors before the trial.

42

To understand the contentions made, it is necessary to relate some of the background of the case. In September, 1957, certain charges of misconduct on the part of undisclosed members of the Rackets Division were made public by the Criminal Justice Commission, in connection with an alleged prostitute. During the ensuing investigation, a sergeant in the Division committed suicide. Certain witnesses called by the Grand Jury claimed privilege against self-incrimination. Goldstein and his superior officer, Forrester, were suspended from duty; and indictments were returned against them for malfeasance in office and maintaining a disorderly house, but never brought to trial. The present indictment against them was filed on November 14, 1957, and assigned for trial in May, 1958. Early in 1958, and before the trial, the cases of the persons tried on the- testimony of Richter and Meekins were quashed. The first trial of these cases had resulted in a mistrial. All of these matters received wide publicity.

Both defendants pleaded not guilty and elected a jury trial, and the case went to trial on May 12, 1958. They filed a challenge to the array on the ground that a certain handbook had been furnished the prospective jurors, which was claimed to be misleading and prejudicial. They also submitted a list of some thirty-four questions to be propounded to the prospective jurors on their *voir dire,* which the court declined to propound. Instead, the court framed six questions of its own. On the second day of the trial, the court was informed by the bailiff that several of the jurors had received telephone calls from persons unknown to them, with reference to the pending case. The court sent for all counsel, and in their presence and in the presence of the defendants, interviewed each of the jurors and alternates. Thereupon the court declared a mistrial, with the following statement: "A dastardly and criminal attempt has been made to influence the jury in this case. I am convinced that this criminal attempt was made without the knowledge in any way of the State's Attorney, counsel for the defendants or by the defendants.

"I am asking the State's Attorney immediately to undertake a vigorous investigation of this criminal act, and to report to me the results of the investigation. I am sure that

counsel for the defendants and the defendants will cooperate to the best of their ability with the State's Attorney's office in this investigation."

The case was again set for trial on June 9, 1958. At the beginning of the trial, after the defendants had renewed their previous motions, which were denied, the State's Attorney, in colloquy with the court, stated that his investigation had not disclosed the identity of the persons who had attempted to tamper with the previous jury. He pointed out, however, that it was not necessarily true that the tampering had been "done by persons desiring to harm the defendants * * * the act may have been aimed to render some assistance to the defendants." The court stated that it would frame an additional question on the *voir dire* relating to the mistrial, and would repeat to the jury the court's statement made in declaring the mistrial, which had received wide publicity, and that he would tell the jury that the State's Attorney's investigation was still continuing. Counsel for the defendants objected to going to trial and moved that "the case be continued until after the investigation is completed." The court denied the motion.

As the court had indicated, it framed an additional question to the jurors on their *voir dire*, reciting the previous action taken, and asking: "Have you formed or expressed any opinion about the mistrial or anything in connection therewith, based on any statement or report from any source whatsoever, which would prevent you from rendering a fair and impartial verdict based solely on the law and the evidence in the case?" It also told the jury: "You are not to speculate as to the reasons for that mistrial or anything in connection with it. That is in no sense evidence in this case. It has, however, had one unfortunate effect. I have determined that it is advisable and necessary for the proper administration of justice and to protect you from any possible harassment that you be sequestered for the duration of this trial * * *. This step * * * means that at all times when you are not here in the courtroom or upstairs in your jury room, * * * you will be in a hotel where all your reasonable wants will be attended to, of course, at public expense. This step is taken by me

on my own initiative and my own responsibility, not at the request of either counsel for the defense * * *."

At the conclusion of the case the jury found both defendants guilty. They filed motions for new trial, which were granted by the Supreme Bench as to Forrester, denied as to Goldstein. The trial court then imposed the sentence and entered the judgment from which the appeal comes here.

We think it unnecessary to quote *verbatim* the questions framed and propounded by the court to the prospective jurors on their *voir dire*. In essence, the questions were: Whether any of the jurors were related by blood or marriage to any of the five persons named in the indictment; whether they had such bias, prejudice or opinion as to prevent their giving the accused the benefit of the rules as to the presumption of innocence and burden of proof (stating them) ; whether they had formed or expressed any opinion of guilt or innocence from any statement or report from any news source or person, which would prevent them from rendering a fair and impartial verdict based solely on the law and evidence in the case; whether the fact that several other members of the Police Department had been charged with (but not convicted of) the commission of criminal offenses would prevent a fair and impartial verdict; whether they had any bias or prejudice for or against members of the Police Department; and whether they had any bias or prejudice against anyone because of race or religion.

The questions proposed by the appellant's counsel sought to elicit answers as to whether any of the prospective jurors knew, or were related to, a large number of specific groups, including the Grand Jury, the Criminal Justice Commission, its secretary, the Rackets Division, named members of the State police, City police, Attorney General's office, and many other persons, some of whom testified in the case, and some remain unidentified. They also inquired whether the jurors had discussed the case with Alvin J. T. Zumbrun, secretary of the Criminal Justice Commission, or attended any gathering at which he spoke; whether they had had any personal experience with the Rackets Division, and whether any member of their families had ever been involved in a raid or

arrest by it. The thirty-fourth question was whether the fact that news agencies had "carried accounts which might indicate that these defendants were involved in other matters than that for which they are now to be placed on trial" would affect their judgment in the case. We have already summarized the additional question framed by the court in its instruction in regard to the mistrial.

The Maryland cases on the scope of examination on *voir dire* were fully reviewed in *Brown v. State,* 220 Md. 29. It is established that the purpose of the inquiry is to ascertain the existence of cause for disqualification and for no other purpose. Mere acquaintance with an individual or group is an insufficient basis for challenging a prospective juror for cause. *Whittemore v. State,* 151 Md. 309, 316. This is true even as to a party to the litigation. *State v. Welsh,* 160 Md. 542, 544, or his attorney. *Brown v. State, supra.* See also *McGee v. State,* 219 Md. 53, 59. It is generally held that mere relationship to witnesses, other than parties, is not a disqualification. See *Butler v. United States,* 191 F. 2d 433 (C.A., 4th Cir.); *Roberson v. United States,* 249 F. 2d 737 (C.A., 5th Cir.); *State v. Wideman,* 51 So. 2d 96 (La.); *Wright v. Commonwealth,* 160 S. W. 476 (Ky.); *State v. Bounds,* 262 S. W. 411 (Mo.); note 18 A.L.R. 375. There is an intimation in some of the cases, however, that the exception as to parties extends to persons instigating a prosecution and having a strong personal interest in the outcome. If we assume, without deciding, that there is such an exception, we find no abuse of discretion in the court's action in the instant case. The appellant relies heavily upon the trial court's refusal to include in its first question the name of the witness, police officer Warrington; indeed, this is the only witness whose testimony is printed in the record extract. Warrington was present at the Taylor raid, and corroborated, to some extent, the testimony of the prosecuting witnesses, Meekins and Richter, whose names were included in the trial court's question. We think, however, that there was no showing as to his personal interest in the outcome.

We find no merit in the contentions as to possible discus-

sions with Zumbrun, or reports published or broadcast. See *Brown v. State, supra,* and cases cited. The matter of possible bias was sufficiently covered in one of the trial court's questions. Possible prior experience of the jurors or their families with the Rackets Division would not necessarily disqualify them. Cf. *Lockhart v. State,* 145 Md. 602, 615, and *Emery v. F. P. Asher, Jr., & Sons, Inc.,* 196 Md. 1. Moreover, we think the point was sufficiently covered in one of the trial court's questions. Cf. *Adams, Nelson, and Timanus v. State,* 200 Md. 133, 140. We find no merit in the contention that the trial court's questions were too general. *Casey v. Roman Catholic Arch.,* 217 Md. 595, is distinguishable. There the court's inquiry as to religious bias was propounded out of context and before the jury had been informed that they were to try a case in which the archbishop was ostensibly a party in his individual capacity, although in reality in his corporate capacity only. We did not intend to encourage counsel to submit extensive interrogatories in the nature of a fishing expedition. The appellant's thirty-fourth question was objectionable as to form.

The denial of the motion for continuance was also well within the discretion of the trial court. *Jackson v. State,* 214 Md. 454, 459. It had been demonstrated that the immediate investigation by the State's Attorney, ordered by the court, had been fruitless. There was no reason to suppose that further investigation would fix the blame within any reasonable time, although, as in the case of any unsolved crime, it is the duty of State officials to continue their efforts. There was no such showing of prejudice due to publicity as to require a continuance on that ground. Cf. *Grammer v. State,* 203 Md. 200, 215, and cases cited.

We find no error in the trial court's charge to the jury. The charge was amplified to meet the objection raised as to burden of proof. There was no objection to the modification. Taken as a whole, we think the charge was adequate and fair. Cf. *Lambert v. State,* 193 Md. 551, 558, and *Noel v. State,* 202 Md. 247, 252, and cases cited.

The objection as to the handbook given to the jury need not detain us long. This was a booklet of elementary instruc-

tion entitled a "Handbook for Jurors" prepared by the Supreme Bench and given to prospective jurors at the time of their selection for future service. It was intended to give general instructions so as to acquaint the jurors with their duties. Judge Allen testified that in handing out the booklet, he instructed the prospective jurors, some of whom were eventually sworn in the instant case, that it was simply an outline of procedures in court and "as they were assigned to each court, the Judge would give them general instructions and if they were sworn to serve in any particular case they would get detailed instructions which they were to follow." We have held that an accused has a right to be present at every stage of his trial "from the time the jury is impaneled." *Midgett v. State,* 216 Md. 26, 36, and cases cited. But, obviously, the rule does not include communications between the court and prospective jurors at the beginning of jury duty, or, indeed, until the trial of the particular case against an accused is reached. See note 62 Harv. L. Rev. 139. The appellant's chief objection is to the alleged fact that some of the general statements in the booklet are not completely accurate, in that they do not contain all of the technical qualifications and exceptions. We think the challenged statements in the handbook were substantially correct, and certainly involved no prejudicial error. For cases dealing with a similar contention, see *People v. Lopez,* 197 P. 2d 757 (Cal.); *People v. Izzo,* 151 N. E. 2d 329, 334 (Ill.); *United States v. Gordon,* 253 F. 2d 177, 184 (C.A., 7th Cir.); *Horton v. United States,* 256 F. 2d 138, 143 (C.A., 6th Cir.); *United States v. Allied Stevedoring Corporation,* 258 F. 2d 104, 107 C.A., 2nd Cir.); 27 Fordham L. Rev. 618; 47 Geo. L. J. 403.

*Judgment affirmed, with costs.*