## STATE ROADS COMMISSION OF MARYLAND *v.* HALLE ET UX.

[No. 150, September Term, 1961.]

*Decided February 28, 1962.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Joseph D. Buscher, Special Assistant Attorney General,* and
*Carl H. Lehmann, Jr., Special Attorney,* with whom was
*Thomas B. Finan, Attorney General,* on the brief, for ap-
pellant.

*W. Lee Harrison,* with whom were *Smith and Harrison* on the brief, for appellee.

PRESCOTT, J., delivered the opinion of the Court.

This appeal from a judgment entered upon a jury's inquisition in a condemnation proceeding in the Circuit Court for Baltimore County involves four rulings of the trial judge on questions of evidence. As presented by the appellant in its brief, they follow:

> "1. Did the Trial Court err in permitting the witness, Lester Matz, to testify to the estimated development costs for the property the subject of these proceedings?
>
> A. Did the Trial Court err in refusing to strike the testimony of the witness, Lester Matz, concerning sewer deficits?
>
> B. Did the Trial Court err in permitting the real estate valuation witnesses of the Appellees to deduct from their "after value" the sewer deficits testified to by the witness Lester Matz?
>
> II. Did the Trial Court err in permitting the witness, Lester Matz, to testify concerning actual development costs on the property used as comparable sales?"

The method of setting up the questions and the manner of arguing them in appellant's brief has made it very difficult (as well as time consuming) to deal with them with any reasonable degree of preciseness. It will be noted that under question I, with the subdivisions A and B, as they are presented above, ordinarily A and B would involve two subordinate questions relating to the main question I, but a reading of the record extract and appellant's argument discloses they involve three different rulings upon questions of evidence. In its statement of facts and in its argument, when referring to facts and/or objections to evidence, sometimes the location thereof in the record extract is given and at other times not, with little, if any, attempt being made to pin point in the record extract where and in what mode objections were properly reserved for decision on appeal. With a record ex-

tract of more than 300 pages, this places an undue burden upon the Court (and also violates Maryland Rule 831 c 3) by necessitating, if the questions are to be answered, an attempt to piece together, from the whole record extract, what the questions are, and whether they have been sufficiently reserved for decision. In addition, the appellant, in the argument in its brief, sets forth, under one heading, questions 1, (A), and (B), which as we have said, present three questions; and then proceeds with its argument in such a manner as to render the task of relating the specific arguments made to any one or more of the questions, and, if so, which one or ones, arduous, if not at times impossible. We shall, therefore, subdivide the questions into I, I A, I B, and II and answer them.

I

The case involves a taking by the appellant of part of a parcel of ground in fee and consequential damages to the remainder. In the proceeding below, the experts on both sides were in accord that the highest and best use that could be made of the property was its sale to a developer or builder for residential subdivision purposes; hence the basic question involved in the trial was the fair market value of the property for such purposes. During their testimony, appellant's real estate experts stated that "development costs" and costs of providing utilities were details that any developer who might buy the subject property would be concerned with; that these costs have a direct bearing on prices paid for potential subdivision land; and that "practically any developer looking at raw land can estimate very accurately those items," indeed "it is uncanny how accurate they are."

The appellees produced a registered professional civil engineer of wide experience, one Lester Matz, who testified he had been the designing engineer in about 300 subdivisions in Baltimore County and many more elsewhere; that he is constantly consulted by developers to estimate development costs in advance of the actual acquisition of land by them; and that each property has its own specific physical characteristics, and before you can set a price on a parcel anywhere, you must analyse a myriad of factors that go into developments. He

was permitted to testify, over objection, that $2335 was "a fair lot development cost" in the subject property. But before this statement was admitted, the witness testified that the development cost is a very important part of any purchase; that it and the land cost constitute the total allowable costs the developer can bear per lot and still make a profit; that development costs include "everything necessary to set a lot preliminary to [the] building of a house," and encompass the costs of roads, storm drains, water meters, water area connection charges, water deficits if any, sanitary connections, sanitary area connection charges, sewer deficits, if any, septic tanks and wells where required, grading, engineering, etc.

Of course, there has never been evolved a method by which the value of land can be computed with accuracy and certainty. Even immediately after a cash sale has been consummated and the purchase price paid to the seller, that purchase price represents the value of the land to the seller when he sold it; but the value of the land to the new owner—whether he will sustain a loss, obtain an equal price therefor, or realize a profit—is something that cannot be definitely stated until there is another sale. As a necessary consequence, it follows that the triers of fact in a condemnation case, who are called upon to fix the fair market value of the land taken and consequential damages, if any, to that remaining in the owner, must estimate as accurately as they can what that fair market value is. Experience has demonstrated that there are many factors that aid in determining such value with reasonable definiteness, and Courts have long recognized that the triers of fact frequently can be aided by the opinions of persons, who, because of their special, peculiar or technical knowledge or experience, are particularly well qualified to estimate and calculate land values with reasonable accuracy.

Matz was a licensed professional civil engineer, and the opinions of civil engineers, under proper circumstances, are received as to matters within the range of their profession. 2 *Jones, Evidence* (5th Ed.), §§ 414, 430. Maryland, in numerous decisions, has permitted witnesses, who possessed special or peculiar knowledge, experience, or training to express their opinions, when the bases for the opinions were

adequate to support their conclusions, and it appeared that the experts' opinions would be helpful to the juries in reaching their verdicts.[1] For a collation of the Maryland cases showing various instances of proper expert testimony, see 10 M. L. E., *Evidence,* § 282.

In regard to the estimated development costs, the appellant specifically contends that Matz failed to include in his estimate of costs two essential items; namely, costs of offsite sewer rights of way and costs of extending a road from the subject property to Park Heights Avenue (a nearby through street), which rendered his estimate purely speculative and conjectural, rather than a reasonably accurate conclusion. Matz testified that he first became acquainted with the Halle property when he calculated the costs of providing the property with public sewers for two developers. He did not include the costs of acquiring the offsite rights of way for the sewer, because he understood the county paid a dollar per foot for sewer rights of way and he never had known a developer to pay for one. Mr. Wolff, Assistant Director of Public Works and Chief Engineer of the Metropolitan District of Baltimore County, testified that "we" are empowered by law to provide sewer facilities; that when we extend sewers, we do not allow private developers to obtain the rights of way, but obtain the easements ourselves; that we first negotiate with the land owners, but if any owner be "adamant," we condemn; and he assumed "that sort of procedure [will] occur here," if the occasion arises. The length of the required sewer rights of way was before the jury. Under the circumstances, we think the entire situation relative to the sewer rights of way was clearly understood by the jury, the bases of Matz's estimate were comprehended by them, and

---

1. It has been stated that an expert witness should not be allowed to express his opinion on facts which the jury require no special knowledge to determine. We do not reach this question here, and, therefore, express no opinion upon it at this time. We note, however, a trend away from the same. Langenfelder v. Thompson, 179 Md. 502, 20 A. 2d 491; Starr v. Oriole Cafeterias, 182 Md. 214, 218, 34 A. 2d 335; Jones, op. cit., § 418; Wigmore, Evidence (3rd Ed.), § 1920; Williams v. Dawidowicz, 209 Md. 77, 120 A. 2d 399; Shivers v. Carnaggio, 223 Md. 585, 165 A. 2d 898.

those bases were sufficient to permit a reasonably accurate conclusion, as distinguished from a mere guess or conjecture. Cf. *Twombley v. Fuller Brush Co.*, 221 Md. 476, 487, 158 A. 2d 110; *Marshall v. Sellers*, 188 Md. 508, 518, 53 A. 2d 5.

This brings us to a consideration of appellant's complaint that Matz's estimate did not include the costs of the *possible* opening of a road (an extension of Hooks Lane) to Park Heights Avenue. Matz stated that he did not include the paving costs of this prospective road because he did not know what would happen in regard to an extension of Hooks Lane, if made; that is, what portion of the cost would be borne by the county and what part would be required of the developer. He estimated the cost of paving to be $70.00 per lot, and said the cost to the developer could be anything from zero dollars to the full cost of the road. Mr. Wolff pointed out that it was by no means settled that the road would be extended, and if it were, who would bear the costs (however, if the property were developed, "we" would insist upon its being improved across the entire frontage of the property). In any event, it is apparent that this item is not of vital importance, for any possible costs for the extension, if made, will still be borne by the county, the remaining Halle land, or both; and if the costs, or any portion thereof were included in the "developer's cost" at the present time, it would necessarily result in a corresponding increase in consequential damages, since the same costs naturally would have to be prorated and borne by a lesser number of lots after the taking. We, therefore, find nothing in reference to this item that rendered Matz's opinion of the "development costs" prejudicial. We hold that the estimate of development costs was a proper factor to be considered by the jury in determining the fair market value of the property taken, and the injury, if any, to the remaining property of the appellees.[2]

---

2. For an interesting article on some of the many factors to be considered in determining "just compensation," see Goldstein, "Economic Evidence in Right-of-Way Litigation," 50 Geo. L. J. 205.

## I A

Matz concluded his testimony of some 75 pages in the record extract on March 2nd. While on the stand, he had testified to certain matters concerning sewerage and deficits (it will not be necessary to explain the meaning of this word as used in its present context for reasons that will soon appear) that were plainly admissible. On March 3rd, counsel for the appellant moved, "to strike out *all* the evidence of the witness, Matz, pertaining to [sewerage] [3] and deficits arising therefrom on the subject property * * *." (Emphasis ours.) Obviously, the motion is entirely too broad. If we assume that parts of his testimony relating to sewerage and deficits were inadmissible, a matter that we do not decide, the court is not required to go through the testimony and select evidence, in a piecemeal manner, which would come within such a general description. *State Roads Comm. v. Bare,* 220 Md. 91, 94, 151 A. 2d 154. Cf. Maryland Rule 522 d 2.

## I B

Under its "Statement of Facts" in its brief, appellant alleges that, "both real estate witnesses [of the appellees] Jones and McCurdy, over objection, subtracted from their after value the sewer deficits computed by the witness Matz," without reference to the record extract wherein the witnesses testified as alleged, or the objections were made. Still under the same heading, it then alleges, "appellant moved that * * * that part of the real estate witnesses' testimony concerning sewer deficits be stricken, which motion was denied (E. 259-260)." The record sustains the fact that this motion was made and denied.

But neither under this heading nor the heading of "Argument" in its brief does it present any argument in support of its contention on this point, nor do the appellees deal specifically with the question. Under these circumstances, we conclude the point has been waived. Maryland Rule 831 c 4; cf. *Fid. & Dep. Co. v. Mattingly Lumber Co.,* 176 Md. 217, 220, 4 A. 2d 447; *Comptroller v. Aerial Products,* 210 Md. 627, 644, 124 A. 2d

---

3. The stenographer, in error, uses the word, "sewage."

805. Surely it is not incumbent upon this Court, merely because a point is mentioned as being objectionable at some point in a party's brief, to scan the entire record and ascertain if there be any ground, or grounds, to sustain the objectionable feature suggested.

## II

The appellant's real estate experts testified to some nine sales of property, which they considered as "comparable" sales. Matz had been the designing engineer on all of these properties. He testified to the actual "development costs" on all, or most of them, stating that he obtained this information at the Department of Land Development of Baltimore County, where they have a development file, which is open to public inspection, on every "legally developed" development in the county. Appellant does not argue that Matz's testimony here was inadmissible on the ground that it was not the best evidence,[4] but contends that there are many changes between the developer's original, preliminary plans and the final, officially accepted plan, and, due to the fact that the *actual* development costs cannot be certainly ascertained until after the raw land has been developed, "these costs themselves could not possibly have influenced the sale of the undevelopd tract [s], and should not have been admitted to show the degree of similarity."

We are unable to agree. We have seen above, from appellant's witnesses as well as those of the appellees, that development costs can be estimated with considerable accuracy, and they are an important, if indeed not a vital, factor in determining the price that a prospective purchaser will pay for an undeveloped property. Evidence of comparable sales in eminent domain proceedings is admissible either as primary evidence bearing upon the market value of the subject property, or to support and bolster the opinion of an expert upon such market value, or both. Since the actual development costs can be estimated with reasonable certainty before they are incurred and

---

4. It is interesting to note that appellant, at the time of moving to strike this testimony, assigned as its reason that "they [the development costs] were estimated and most speculative." However, in its brief, the complaint is that the testimony related to actual development costs.

they bear a direct relationship to the fair market value of potential subdivision property, evidence of these actual costs on the comparable properties was clearly admissible, we think, to assist the jury in arriving at the fair market value of the property taken and the consequential damages, if any, to the remaining property of the appellees.[5]

Finding no error in the record, the judgment will be affirmed.

*Judgment affirmed, with costs.*

---

**5.** Cf. Friedman, Ency., Real Estate Appraising, pp. 89, 497-500.