# RICHARD von LUSCH v. STATE OF MARYLAND

[No. 213, September Term, 1975.]

*Decided April 15, 1976.*

The cause was argued before MENCHINE, LOWE and MELVIN, JJ.

Richard von Lusch, in proper person, as appellant.

*Bernard A. Raum, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, J. Owen Wise, State's Attorney for Caroline County* and *John T. Clark, Assistant State's Attorney for Caroline County* on the brief, for appellee.

MELVIN, J., delivered the opinion of the Court. LOWE, J., dissents and filed a dissenting opinion at page 290 *infra*.

On September 23, 1974, the appellant, Richard von Lusch, was found guilty by a jury in the Circuit Court for Caroline County (Judge B. Hackett Turner, Jr. presiding) of four violations of § 555A of Article 27 of the Annotated Code of Maryland (1976 Repl. Vol.). That section, in pertinent part, makes it "unlawful for any person to make use of telephone facilities or equipment * * * for repeated calls, if with intent to annoy, abuse, torment, harass, or embarrass one or more persons" and provides that a violator is guilty of a misdemeanor and subject to a fine of not more than $500 or imprisonment for not more than 3 years, or both in the discretion of the court.

The charges against appellant originated in the Maryland District Court in Queen Anne's County as a result of separate complaints filed by Julius Grollman and Eugene E. Grannan. Upon appellant's requests for jury trial the cases were transferred to the Circuit Court for Queen Anne's County. The cases were then, at appellant's request, removed to the Circuit Court for Caroline County where they were consolidated for trial. The charging document in each case contained two counts. The first count in each charging document charged that appellant violated the above-quoted portion of § 555A on Sunday, May 5, 1974 and the second count in each charging document alleged a similar violation on Saturday, May 11, 1974.

After a motion for a new trial was denied on December 5, 1974, appellant was sentenced on January 29, 1975 to the Centreville jail for 3 months on each count in each case; the sentences were suspended and appellant placed on probation for 3 years. He also received a fine of $500 on each count in each case.

In his brief, filed in proper person,[1] appellant presents 8 questions on this appeal:

---

1. Appellant was represented by retained counsel at the trial below, but his counsel was not present at the time appellant was sentenced.

"1. Can a resident who is aggrieved and injured by the illegal acts of another be arrested and convicted for demanding the laws be enforced as written?

2. Has an elected official and others in public office the right to enter into a conspiracy to circumvent the law by creating new laws to cover up violations of the law which deny Constitution and Civil Rights?

3. What is the justification of wiretaps without a court order and the admission of that evidence in violation of 10-401, 10-402, 10-403, and 10-406 of the Annotated Code of Maryland and the Federal Constitutional laws which forbid these actions?

4. Are the courts to be allowed to suppress evidence that can prove a citizen innocent?

5. Are the right to confront a witness and cross examine to be denied in any court in this country?

6. Under what rules have the courts the right to deny the right to counsel in violation of the 6th and 14th Amendments?

7. Has not the accused the right to be present at a hearing for a new trial if he so desires?

8. Have the public officials the right to aid in the maintenance of a hazard to the lives and health of the residents of a community when that enterprise has clearly established itself as a danger to the community and a nuisance?"

We shall consider questions 1, 2 and 8 under the heading *sufficiency of the evidence*, for, as we understand appellant's arguments on these questions, he contends that, as a matter of law, the evidence shows his lack of intent, in making the telephone calls, to "annoy, abuse, torment, harass, or embarrass", and therefore his motion for "directed verdict" [2] at the close of all the evidence should have been granted.

---

2. Md. Rule 755 abolishes such motions. We shall treat the motion as a motion for judgment of acquittal for purposes of this appeal.

Preliminarily, we note that the record before us in this case reveals that it is yet another chapter in the running battle appellant has waged for a number of years against the existence of the Bay Bridge Airport.[3] The airport is located just south of Maryland Route 50/301 in Queen Anne's County near the eastern end of the Chesapeake Bay Bridge. Appellant lives just north of Route 50/301 in a large house in which he operates an antique business. He testified that his property is 1,000 ft. from the airport runway. To say that he is not happy with the location of the airport is certainly an understatement. This unhappiness is perhaps equalled in degree only by his unhappiness with the government officials of Queen Anne's County for permitting it to exist and with the operators of the airport for the manner in which it is operated.

I

## Sufficiency of the Evidence

Appellant does not dispute the testimony of prosecution witnesses that on May 5, 1974, and May 11, 1974, he did in fact make repeated calls to both Mr. Grollman and the Bay Bridge Airport. Mr. Grannon is the president of the company that operates the airport. Mr. Grollman, who operated a general merchandise store from his home and who at that time was one of three County Commissioners of Queen Anne's County, testified that on Sunday, May 5, 1974, he received 40 telephone calls from the appellant, and that on May 11, 1974, he received 14 calls from him between 8:50 A. M. and 9:15 A. M. Testimony of personnel at the airport was that on May 5, 1974, appellant made as many as 14 calls to the airport, most of which were within short periods of

**3.** See von Lusch v. Bd. of County Commissioners, 268 Md. 445 (1973) and von Lusch v. Bd. of County Commissioners, 24 Md. App. 383 (1975), cert. denied by Court of Appeals, May 23, 1975.

At the time of appellant's alleged telephone misuse, an appeal to this Court was pending from the decision of the Circuit Court for Cecil County (to which the case had been removed for trial) upholding the validity of an amendment to the Queen Anne's County Comprehensive Zoning Ordinance. The effect of that holding, affirmed by our decision in 24 Md. App. 383, was to validate the present location of the Bay Bridge Airport.

time in the morning, and that on May 11, 1974, appellant made as many as 12 calls, again mostly within short periods of time in the morning. There was ample evidence from which the jury could have found that the calls were "repeated" within the meaning of the statute. As we have indicated, appellant does not dispute the sufficiency of the evidence in that regard.

Appellant does, however, vigorously challenge the sufficiency of the evidence concerning whether or not the calls were made "with intent to annoy, abuse, torment, harass or embarrass". As we understand his contention here, it is essentially that he had a right to make the repeated calls because the airport, in his opinion, was operating illegally and he was only attempting to right what he perceived to be a wrong — not to annoy, harrass, etc. anyone. He testified that his calls to Mr. Grollman on May 5, 1974, were to "ask that he [Grollman] enforce the zoning regulations as I have many times, which would take the planes away from my property", but that "ever [sic] time I attempt to call Mr. Grollman he recognizes my voice and he hangs up", and that he was unable to "get a sentence or message to him". He said "I actually did dial Mr. Grollman's number, according to my records, forty-one (41) times" on May 5, 1974. "Mr. Grollman never answers the phone as a rule, or he will hang up on me if he does and if I ask a question, he just does not answer! He has never given me a direct answer yet!" Each time he called him, an airplane was close to his building. "Grollman listened when I asked him some questions about when he was going to enforce the zoning ordinances, but he did not answer".

Mr. Grollman's version of the circumstances was quite different. He testified that his telephone number for his home is the same as that for his store; that on Sunday, May 5, 1974, the store was not open for business; that on that date, as well as May 11, 1974, when his store was open for business, appellant "would complain about the airplanes flying over his business, which they were trespassing on him; and . . . why I didn't protect his rights or enforce the law of airplanes flying over his place of business", and that

appellant's complaints were made in a loud and arrogant tone.

> "Q. Now was he asking questions or were these just statements?
>
> A. Well if he did ask a question a . . . I didn't get time to answer it because he always hung up on me. If there were any questions to answer.
>
> Q. Do you mean he would just say what ever he was going to say and hang up?
>
> A. Yes sir.
>
> Q. And you never had any time to reply to anything, is that right sir?
>
> A. Very few occasions on the phone calls."

Mr. Grollman testified that at other times on the dates in question, "because I had customers to wait on, and I would answer the phone, recognize the voice and just hang up and go on and wait on the customers".

> "Q. And this voice you recognized as Richard von Lusch?
>
> A. Yes sir. And on numerous occasions he identified himself anyway, or was saying the airplanes were flying over his place of business."

When asked what effect "these repeated calls" had on him and his business, Mr. Grollman said:

> "Well it has hindered my business, if I would have four or five customers in there, being myself, and if I couldn't take care of them, of the customers by answering the phone, running back and forth to the phone, a . . . someone occasionally would walk out and a . . . I wouldn't have a chance to wait on them."

Mr. Grollman further testified that although the Board of County Commissioners had a duty to enforce the county zoning laws, he told appellant he "had no jurisdiction over

airplanes flying in the sky"; and that appellant never made an appointment with him in his "official capacity as a County Commissioner and came before the Commission".

It is of course true that any person holding elective office should expect telephone complaints, even repeated complaints, from his constituents concerning a variety of matters. Moreover, the fact that the public official might consider such calls annoying, abusive, tormenting, harassing, or embarrassing, or even that the calls may in fact have one or more of those characteristics, does not alone subject the caller to punishment under the statute invoked here. On the other hand, if such calls are made with the requisite intent "to annoy, abuse, etc.", the fact that the recipient of the calls is a public official does not immunize the caller from the statute's sanctions. It is but a factor to be considered by the trier of fact in considering whether the element of intent has been established.

Testimony of airport personnel revealed that the repeated calls received from appellant followed the same general pattern as those he made to Mr. Grollman. He complained of airplanes flying too close to his house. "He [appellant] says what he has to say and then he hangs up. You have no time to answer him, and no time to ask anything". "Generally in the morning he is calm and, you know, reasonable, after about the third or fourth call he is screaming and yelling and you can't make any sense out of it anyway". On both May 5th and May 11th he said to the recipients of the calls, "I will tie your phone up all day if I have too[sic]", or that he "was going to tie the phone up all day". Mr. Grannon testified that the airport had no "direction and control" over the airplane pilots' observance of flight patterns to and from the airport, but that "we have a chart on the wall showing the take-off and landings and we have a drawing of Mr. von Lusch's house asking all aircraft to avoid that area". Mr. Har, the airport manager, testified that he took no action in response to appellant's calls on either May 5th or May 11th, " . . . because very simply . . . because I could be sitting right there at the desk and every time that phone would ring about an airplane you could look and see what that airplane

was doing. Now on no occasion were those airplanes near that man's house".

This Court, in *Waller v. State*, 13 Md. App. 615, 618, speaking through Judge Powers, reviewed the phrase "with intent" as applied to the field of criminal law:

> "Many common law and statutory crimes in Maryland are defined as the doing of a certain act *with intent* to do a certain other act. This element of intent, so common in our criminal law, is seldom proved directly, but is more often found by drawing inferences from facts proved which reasonably indicate under all the circumstances the existence of the required intent. In *Yopps v. State*, 234 Md. 216, 198 A. 2d 264, the Court of Appeals said, at pages 220-221:
>
>> 'Finding the requisite intent to steal is, of course, never a precise process for intent is subjective, and it must therefore be inferred from the circumstances of the case if it is found at all.'
>
> See also *Putinski v. State*, 223 Md. 1, 161 A. 2d 117.
>
> This Court has several times had occasion to point out that intent is usually determined by inference, rather than by direct proof. In *Wiggins v. State*, 8 Md. App. 598, 261 A. 2d 503, we said at page 609:
>
>> 'In short, the finding of the requisite intent was a matter for the trier of fact. See *Szewczyk v. State*, 7 Md. App. 597, 601 . . . .' "

In reviewing the sufficiency of the evidence in a jury trial, we do not inquire into and measure the weight of the evidence to ascertain whether the State has proved its case beyond a reasonable doubt. Rather it is our limited function to determine whether the evidence shows directly or supports a rational inference of the facts to be proved, from which the jury could fairly be convinced, beyond a

reasonable doubt, of the defendant's guilt of the offense charged. *State v. Devers,* 260 Md. 360 (1971); *Spease v. State,* 21 Md. App. 269 (1974); *Vuitch v. State,* 10 Md. App. 389 (1971).

Applying this test to the record before us, we cannot say that there was no legally sufficient evidence from which the jury could have found the appellant guilty of the charges against him. See *Pressley v. State,* 244 Md. 664 (1966).

## II

### *Alleged Violation of Wiretap Laws*

Appellant contends that his civil rights were violated when the trial court admitted evidence obtained as a result of the attachment to his telephone line of a "pen register". A pen register is a device which, when attached to the telephone line of a particular telephone, records on tape all telephone numbers dialed from that telephone. The attachment is made at the telephone company plant, not at the premises where the telephone from which calls originate is located. The device does not record conversations; nor does it indicate whether or not the call was completed. It records only that a particular telephone number was dialed.

Pursuant to complaints received from Mr. Grollman and the Bay Bridge Airport concerning appellant's repeated calls, the telephone company placed a pen register on appellant's telephone line on April 30, 1974. It remained on the line until May 6, 1974. A representative from the telephone company testified that on May 5, 1974, forty-three (43) calls were made from appellant's telephone number to Mr. Grollman's telephone number, and twelve (12) calls were made from appellant's number to the airport telephone number. The only objection appellant made to this testimony was based on the chain of custody of the information recorded on the tapes. That issue is not raised or argued on this appeal. The issue of whether or not use of the pen register was a violation of appellant's civil rights was not raised or decided below. We therefore do not consider it. Md. Rule 1085. We observe, however, that had

the issue been properly preserved for our review, and even if we were to decide (which we find it unnecessary to do) that the evidence was improperly admitted, we would further hold that it was harmless beyond a reasonable doubt, for the evidence obtained from the pen register was the same evidence freely admitted by the appellant himself, i.e., the number and frequency of the telephone calls.

## III

### Other Rulings on the Evidence by Trial Court

#### (a)

In his argument with respect to questions 4 and 5 presented in his brief, appellant contends he "was consistently denied the right to introduce evidence during trial thru cross examination of the various witnesses and thru the submission of documents and photos which would have upheld my claim of violation of my Constitutional and Civil Rights" and "was denied the right to obtain evidence as to the real reasons for the phone calls from Julius Grollman, 21 times". "The Transcript will show more than 50 places where information was denied to me".

Nowhere in his brief does the appellant refer us to any particular portion of the record or transcript giving factual support for these contentions or that they were properly preserved for appellate review. Md. Rule 1031 c 4 requires that appellant's brief contain "A clear concise statement of the facts material to a determination of the questions presented" and that "Reference shall be made to the pages of the record or the transcript of the testimony as contained in the record supporting his assertions". In *Van Meter v. State*, 30 Md. App. 406 (1976) Judge Lowe said for this Court:

> "The Court of Appeals has held that issues can be waived for failure to comply with the procedural requirements to preserve the right of appellate review. *Harmon v. State Roads Comm.*, 242 Md. 24, 29-32; *Hyde v. State*, 228 Md. 209, 218; see also

*Comptroller v. Aerial Products,* 210 Md. 627, 644-645.

> 'Surely it is not incumbent upon this Court, merely because a point is mentioned as being objectionable at some point in a party's brief, to scan the entire record and ascertain if there be any ground, or grounds, to sustain the objectionable feature suggested.' *State Roads Comm. v. Halle,* 228 Md. 24, 32.

* * *

> ".... We cannot be expected to delve through the record to unearth factual support favorable to appellant and then seek out law to sustain his position. *Cf. Clarke v. State,* 238 Md. 11."

Under the circumstances, we hold that appellant has waived the issues raised by these contentions.

### (b)

Appellant does refer to "page 21 of the transcript" in support of his argument that the trial court violated the "Voucher Rule" during the defense cross-examination of Mr. Grollman, and, argues appellant, his right of cross-examination was thereby prejudicially affected. Appellant's counsel had asked the witness if he had ever taken any action with regard to appellant's request that the witness enforce the Zoning Ordinance. The court sustained an objection to the question and said: "Well this is an administrative officer in the county government. He is not the State's Attorney or a police officer. He has no authority to, as I understand it, to enforce criminal law." As we view these remarks, the judge was merely explaining his ruling. He was in no sense "vouching for" the character or integrity of the witness. The contention is without merit.

### (c)

During the State's cross-examination of appellant he was

questioned concerning his past criminal record. The transcript reveals the nature of the inquiry:

"Q. On April 25th of 1931 were you a . . . .

MR. VON LUSCH: Mr. Clark, if you are going to bring a juvenile record into this court, I am going to object strenuously!

THE COURT: Now just one minute Mr. von Lusch! The question hasn't been asked! This court will pass on it.

MR. VON LUSCH: Well he is leading up to it sir!

THE COURT: Yes sir.

CONTINUED CROSS-EXAMINATION.
BY MR. CLARK.

Q. On April 25, 1931 were you convicted of larceny of an auto?

MR. VANCE: Object, Your Honor.

THE COURT: Now just a minute. Just a minute! He has subjected himself to cross-examination by taking the stand.

MR. VANCE: There was no direct examination on that subject whatsoever . . . .

THE COURT: But it may be (unintelligible.)

MR. VANCE: It is prejudicial and we ask for a mistrial.

THE COURT: All right, sir, overrule your Motion.

MR. CLARK: Your Honor any time a witness takes the stand his credibility is at issue.

THE COURT: Yes sir, his credibility is at issue and that is all there is to it.

MR. VON LUSCH: May I ask a question judge? As I understand under the law a juvenile record may not be brought up and that one is fallacious and I have repeated it to the State Police and to this court before . . . it is a fallacious record. It is

deframing (sic), it is maligning to me, and it is back when I was a young punk seventeen (17) years old. I admit I have it, but to have it here, I think is unnecessary and unwise.

THE COURT: Answer the questions.

## CONTINUED CROSS-EXAMINATION. BY MR. CLARK.

Q. You were convicted of larceny of an auto?

A. Yes, that is right. A fifteen dollar ($15.00) Ford.

Q. How about .... pardon?

A. A fifteen dollar ($15.00) Ford.

Q. How about September 7th of 1931 under the name of Richard Henry Lusch, were you convicted of burglary?

A. If you call breaking into an apple cellar, yes."

The question of the admissibility of the April 25, 1931 auto larceny has not been specifically presented to us by any of the "Questions Presented" set forth in appellant's brief. The State does not mention the issue in its brief. However, included under appellant's briefed "Argument" with respect to question 5, *supra*, ("Court did not have the right to deny confrontation of Accuser"), appellant states:

"The States Attorney on (T. 131, 132) introduces a record in which the last entry was 38 years old. This had been used in at least 3 previous trials altho I objected to its usage based on the grounds that in NONE of the cases cited was I represented by counsel. I was running around with a gang that did end up in states prison for many years. I was lucky in being apprehended as I was and straightened out. (T. 60 of the sentencing hearing), Mr. Streelman of the probation department affirms that the information used by Mr. Clark, States Attorney, should not have been used and therefore it was prejudicial to the jury."

When appellant's counsel objected to the question, "On April 25, 1931, were you convicted of larceny of an auto?", he was not asked by the trial judge to state his reasons for the objection. Counsel, nevertheless, did give his reasons. The reasons given were "there was no direct examination on that subject whatsoever" and "It is prejudicial". The appellant himself volunteered two other reasons for the objection, i.e., the inadmissibility of a juvenile record as a matter of law, and the relevancy of a record "back when I was . . . seventeen (17) years old".

Under the circumstances we think the question of the admissibility of the April 25, 1931 conviction is properly before us and that his contentions on appeal with respect to the admissibility of the prior convictions are two-fold:

1) Relevancy or remoteness in time ("38 years old"), and

2) He was not represented by counsel, contrary to the principle enunciated in *Burgett v. Texas*, 389 U. S. 109 (1967), as applied in *Johnson v. State*, 9 Md. App. 166 (1970) to the introduction of a prior conviction to impeach a defendant-witness.

Appellant's first contention is answered by the holding in *Cousins v. State*, 230 Md. 2 (1962), where the Court of Appeals, speaking through Judge Hammond (later Chief Judge), said at pp. 4-5: "We think that where the prior conviction was for an infamous crime, evidence of it [for impeachment purposes] is admissible without reference to the time of its commission, for such bearing and weight on credibility as the trier of fact may give it under the circumstances". Since larceny is an "infamous" crime, appellant's first contention is without merit.

As to appellant's second contention, based on the *Burgett* principle, we are confronted with the question of whether we may consider it at all, since that ground or reason for the objection was not given below and apparently was not considered by the trial court. Rule 1085. As the record shows, the court did not request counsel to state the grounds

for the objection. It was therefore not necessary that it be done to preserve the objection for appellate review. The fact that an objection was made, even without stating any reasons for the objection, is sufficient. Rule 522. *See* also *Bailey v. State*, 263 Md. 424 (1971), where the Court of Appeals overruled that portion of our opinion in *Johnson v. State*, 9 Md. App. 166, 177, where we said: "We hold that it is incumbent upon the defendant, when his objection to evidence of a prior conviction is on the ["non-traditional"] ground that the conviction was constitutionally void [because of the Burgett principle] to state his reasons to the court to enable it properly to determine the issue". The Court of Appeals in *Bailey, supra*, through Chief Judge Hammond, said, "If we assume the Burgett principle is applicable to a witness, we do not agree with the view of the Court of Special Appeals that Rule 522 d 1 means one thing for 'traditional' grounds of objection and another for 'non-traditional' grounds". The question in this case thus becomes: Where the trial court does not request grounds for an objection but the party objecting nevertheless states his grounds, is the objecting party deemed to have waived any other unstated grounds he may have had for the objection?

Numerous decisions hold that where the objecting party is asked by the trial court to state grounds for an objection to evidence, the objector should state *all* the reasons (if he has more than one) for objecting, and if he does not he is ordinarily regarded as having waived any basis not so stated. See *Wilt v. Wilt*, 242 Md. 129 (1966) and cases cited therein and *Ross v. State*, 24 Md. App. 246 (1975), rev'd on other grounds, 276 Md. 664 (1976). We see no reason why the waiver rule should not apply with equal force where, although not asked to do so, the objector nevertheless states the basis for his objection. In the instant case, there is no reason to assume that had the appellant been asked by the trial judge he, or his counsel, would have stated any different or further grounds for the objection. Nor is there any indication in the record, or claim on appeal, that appellant or his counsel were prevented from fully articulating, once they undertook to do so, all grounds for

the objection. Since the *Burgett* principle was not included as one of the stated grounds for the objection at the trial below, we hold that the objection on that ground has been waived. We therefore do not consider it. Rule 1085.

### IV

We next consider appellant's claim that the hearing on his motion for new trial, held when he was not present, violated his rights under the Sixth and Fourteenth Amendments to the U. S. Constitution. Appellant was represented at the hearing by counsel who presented argument on his behalf.

Maryland Rule 775 providing that an accused "shall be present . . . at every stage of the trial" embodies the fundamental right of a defendant in a criminal prosecution "to be confronted with the witnesses against him" guaranteed by both Article 21 of the Maryland Declaration of Rights and the Sixth Amendment of the Federal Constitution, made applicable to the states through the Fourteenth Amendment. *Pointer v. Texas,* 380 U. S. 400 (1965). *State v. Collins,* 265 Md. 70 (1972). A hearing on a motion for new trial, however, is not part of the trial itself. In *Ash v. State,* 238 Md. 317 (1965), the Court of Appeals, in the context of speedy trial rights, said at p. 320:

> "Although there is no question but that the appellant was entitled to a speedy trial, we hold that this right has no application to a hearing on a motion for a new trial. We think the language used by the drafters of Art. 21 clearly imports guarantees applicable to the processes leading to and ending with the criminal trial itself, and *we do not believe that either the motion for a new trial or the hearing thereon constitutes a 'trial' or any constituent part thereof within the meaning of Art. 21."* (Emphasis added.)

> \* \* \*

> *"The majority of jurisdictions hold that a defendant's presence at a hearing on a motion for*

*new trial is not required because it is not part of the trial.* See cases collected in Annotation in 69 A.L.R. 2d 835 (1960). The case of *Joseph v. State,* 141 N.E. 2d 109 (Ind. 1957), cert. dism. 359 U. S. 117 (1959), which is the subject of the annotation just cited, is representative of the cases following this rationale. The Indiana Supreme Court in rejecting Joseph's contention in regard to his absence from the hearing on the motion for new trial stated (at p. 114) 'The ruling on a motion for a new trial in a criminal case is not part of the trial of the accused as contemplated by the statutory and constitutional provisions of this State.' See also *Barber v. United States,* 142 F. 2d 805 (4 Cir. 1944), cert. den. 322 U. S. 741 (1944); *Bradford v. State,* 202 S. W. 2d 647, 648 (Tenn. 1947); and see *Orfield, Criminal Procedure from Arrest to Appeal,* 494, 498. As Orfield points out, op. cit., p. 505, the Federal Rules of Criminal Procedure do not require the presence of the defendant at the hearing of a motion for a new trial." (Emphasis added.)

We hold that none of appellant's constitutional rights were infringed when the hearing on his motion for new trial was conducted in his absence.

## V

Finally, we consider appellant's contention that his constitutional right to be represented by counsel was violated at the sentencing hearing. We think the contention is meritorious and, while we affirm the convictions, shall remand the case to the trial court for resentencing.

It appears from the record that on December 18, 1974, appellant was notified by registered mail that sentencing would take place on January 29, 1975. The notice contained the following statement: "Mr. von Lusch: You are responsible for advising your counsel of this scheduled court appearance". On January 22, 1975, new counsel entered his appearance for appellant. On January 28, 1975, the new

counsel filed a "Motion for Continuance", explaining that he "must be present" in another county at a previously "specially set" hearing "on the same date and time" as appellant's sentencing, and that the proceedings in the other county "involves approximately fifteen (15) lawyers and as many motions. It would therefore present some degree of problem in attempting to reschedule that matter".

On January 29, 1975, appellant appeared in court without counsel. The judge inquired if he was ready for sentencing. Appellant replied that he was not; that he was not waiving his right to be represented; that he had "talked to a half a dozen attorneys and I could not get an attorney to come into this county. This is the counsel of my choice [his new counsel] because he is well aware and he has been advising Jim Vance [appellant's trial counsel] on many phases of this case. He knows this case". Appellant also told the judge he was "under heavy sedation" and "my memory is bad as part of the injuries I have suffered from the Bay Bridge Airport and the harassment of this court. . . . [Y]ou see I am shaking and I cannot help it . . . ." [4]

The judge felt that appellant should not have engaged the new counsel so close to the sentencing date when he knew counsel had a scheduling conflict. Appellant responded that, "He [counsel] had the papers on this case for more than a month. He has been studying them. I was not aware at the time that he had something pending on this date". The sentence hearing proceeded, at the end of which appellant reiterated: "I again say I do not waive any of my constitutional rights and object to not having my counsel present".

We have held that the sentencing process is a stage of the trial at which a defendant is entitled to the assistance of counsel. *Smith v. State,* 11 Md. App. 317, 324 (1971). Maryland Rule 719. We have also held that there may be circumstances where the conduct of the accused is so plain and clear as implicitly to demonstrate a knowing and intelligent waiver of the right to counsel. *Pearson v. State,* 7

---

4. The record reflects that after the trial appellant was a patient at a Veterans Administration hospital for a period of time.

Md. App. 714. On the record before us, although there is some basis for the trial judge's belief that appellant's conduct subsequent to the trial amounted to an attempt to "say when he is going to be sentenced", we cannot say that his conduct was so plainly and clearly directed toward that end as to warrant a holding that he had thereby implicitly demonstrated a knowing and intelligent waiver of such a fundamental right. As *Johnson v. Zerbst,* 304 U. S. 458, admonishes us, courts must "indulge every reasonable presumption against waiver of fundamental rights . . . . [and] not presume acquiescence in the loss of fundamental rights".

> *Convictions affirmed; sentences vacated; case remanded for resentencing; costs to be paid one-quarter by Queen Anne's County and three-quarters by appellant.*

*Lowe, J., dissenting:*

In *Burgett v. Texas,* 389 U. S. 109, the Supreme Court held that prior convictions obtained when a defendant was not represented by counsel could not be used "to support guilt or enhance punishment," premised upon the theory that to do so was an erosion of the right to counsel expressed by *Gideon v. Wainwright,* 372 U. S. 335. Emphasizing the importance it placed upon this principle, the Supreme Court followed *Burgett* with *United States v. Tucker,* 404 U. S. 443, holding that convictions obtained in violation of the fundamental right to counsel may not be considered even in the sentencing procedure.

Recognizing the importance placed upon this principle by the Supreme Court, we have held that the burden is on the State to establish by "clear and convincing evidence that the defendant's constitutional right to counsel was not infringed at the prior proceeding." *Moore v. State,* 17 Md. App. 237, 242-243; *Johnson v. State,* 9 Md. App. 166.

"The procedure that we spelled out in *Johnson,*

*supra,* and reiterated in *Moore, supra,* was not intended to be a guide, that may or may not be used, but was enunciated and promulgated for the Bench and Bar to follow." *Carroll v. State,* 19 Md. App. 179, 185.

The majority here points out the inarticulate but strenuous attempts both by counsel and the accused to preserve his right not to be prejudiced by an outrageous attempt to interject into the case unrelated, ancient and possible unconstitutional convictions from appellant's childhood.

> "When appellant's counsel objected to the question, 'On April 25, 1931, were you convicted of larceny of an auto?', he was not asked by the trial judge to state his reasons for the objection. Counsel, nevertheless, did give his reasons. The reasons given were 'there was no direct examination on that subject whatsoever' and 'It is prejudicial'. The appellant himself volunteered two other reasons for the objection, i.e., the inadmissibility of a juvenile record as a matter of law, and the relevancy of a record 'back when I was . . . seventeen (17) years old'." at p. 285.

It is inconceivable to me that the majority can consider these efforts as a waiver of so fundamental a right as right to counsel, then six pages later pontifically quote from *Johnson v. Zerbst,* 304 U. S. 458 that courts must:

> " 'indulge every reasonable presumption against waiver of fundamental rights . . . [and] not presume acquiescence in the loss of fundamental rights'.",

when compelling a resentencing, precisely because counsel was not present at its imposition.

The suddenness and surprise with which issues of this nature arise at trial does not always lend itself to an easy ability to single out a case or precise rubrics as in the subtle manner required by the majority in order to preserve the

issue on appeal. The preservation of rights should not depend upon a fortunate choice of words. Nor should we discourage counsel from attempting to ignite a necessary spark of recognition in the court by volunteering reasons for an objection, for fear of overlooking the key reason.

Here, in any case, counsel's stated reasons for his objection, prejudice and questioning beyond the scope of direct examination, were both certainly not completely groundless and broad enough not to be considered a waiver. On the other hand, the accused's reference to the "inadmissibility of a juvenile record as a matter of law" practically described our recent holding in *Carroll, supra. Cf. Bailey v. State,* 263 Md. 424, 427. It would appear that, to the majority, the first was too broad and the second too narrow.

However viewed, the objections here are as those described in *Bailey,* 263 Md. at 427:

> "We find it impossible from the record to tell what the basis of the objection was."

The objections clearly placed the burden upon the State to establish "by clear and convincing evidence" before they could be used to attack his character, that these 38 year old convictions were not obtained by an infringement upon appellant's constitutional right to counsel. *Johnson* and *Moore,* both *supra.* To hold otherwise would make the assertion of a constitutionally founded right a guessing game played during the heat of trial, with the defendant's right to appeal the stakes. That is completely contrary to the message of *Bailey, supra.*

I respectfully dissent.