## CLINTON EDWARD VAN METER *v.* STATE OF MARYLAND

[No. 539, September Term, 1975.]

*Decided March 1, 1976.*

The cause was argued before MOYLAN, DAVIDSON and LOWE, JJ.

*Earl E. Manges, Assigned Public Defender*, for appellant.

*John A. Austin, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, Lawrence V. Kelly, State's Attorney for Allegany County* and *Robert W. Hamilton, Assistant State's Attorney for Allegany County* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

Clinton Edward Van Meter was convicted by a jury in the Circuit Court for Allegany County of murder, unlawful use of a handgun, assault, and unauthorized use of a motor vehicle. Upon appeal he raises 13 questions, 4 of which we decline to consider. Under Md. Rule 1031 c 5, appellant is required to provide argument in his brief to support his position. In questions VI and VIII issues are raised but are not supported by argument. Questions IV and V are each followed by two sentences which are in no sense argument.

The Court of Appeals has held that issues can be waived for failure to comply with the procedural requirements to preserve the right of appellate review. *Harmon v. State Roads Comm.*, 242 Md. 24, 29-32; *Hyde v. State*, 228 Md. 209, 218; see also *Comptroller v. Aerial Products*, 210 Md. 627, 644-645.

> "Surely it is not incumbent upon this Court, merely because a point is mentioned as being objectionable at some point in a party's brief, to scan the entire record and ascertain if there be any ground, or grounds, to sustain the objectionable feature suggested." *State Roads Comm. v. Halle*, 228 Md. 24, 32.

While we have strained in order to find that that which follows several other questions is "argument," we will not consider questions IV, V, VI and VIII. *GAI Audio of N.Y. v. C.B.S.*, 27 Md. App. 172, 183; *Kimbrough v. Giant Food, Inc.*, 26 Md. App. 640, 654. We cannot be expected to delve through the record to unearth factual support favorable to appellant and then seek out law to sustain his position. *Cf. Clarke v. State*, 238 Md. 11. We have perhaps gone too far in that direction by considering other questions with skeletal argument and referential legal support, *e.g.*, questions VII and XIII.

### The Facts

> "O, beware, my lord, of jealousy;
> It is the green-eyed monster, which doth mock
> The meat it feeds on; that cuckold lives in bliss
> Who, certain of his fate, loves not his wronger;
> But, O, what damned minutes tells he o'er
> Who dotes, yet doubts, suspects, yet strongly loves!" [1]

Appellant's conviction of murder rested heavily upon the testimony of his paramour Debra Turner, who used appellant's jealousies to bring about his own misfortune, in

---

[1]. William Shakespeare, *The Tragedy of Othello, The Moor of Venice*, Act III, Sc. III.

much the same manner as did Othello, the Moor of Venice. She was present when the victim was killed and testified that it was her accusation, later retracted, that the victim had sexual relations with her which so infuriated appellant that he shot him. The sufficiency of the evidence to convict appellant of any of the charges upon which the jury found him guilty is not contested. The errors alleged are primarily procedural.

## I

"Whether or not the Court erred in overruling the Suggestion for Removal?"

The major argument set forth by appellant is that, because his Suggestion of Removal [2] was sworn to be true and notarized, and "[i]nasmuch as there was no demur or traverse of the allegations of fact by the State, the facts averred must be taken as true." Appellant cites *Jones v. State*, 185 Md. 481, 487 and *Kemp v. State*, 6 Md. App. 463 to support his argument. We do not find support for appellant in these cases. In *Kemp*, interpreting *Jones*, we gave recognition to the argument put forth here by appellant:

"A reading of Jones shows that pertinent facts, related in the affidavit, were not denied by the State, and therefore accepted as true." *Kemp v. State*, 6 Md. App. at 466.

However, we distinguished that holding in the very next sentence:

"The principle has no application where the affidavit states only the conclusions without stating the underlying facts." *Id.* at 466.

Van Meter's affidavit contains three allegations of prejudice and no underlying facts. The first claims prejudice from

---

2. At argument appellant advised the Court that the Suggestion of Removal was not in the record. We find him to be in error. It was found as pages 10 through 12 of the record and so indexed.

extensive coverage by the media, the second and third assert, without factual support, prejudicial statements publicly made by the prosecuting witness and her family; however, appellant failed to show that the extensive coverage alleged resulted in prejudice. *Piracci v. State*, 207 Md. 499; *Grammer v. State*, 203 Md. 200, 211. No evidence to support the allegations and conclusions of prejudice were offered to sustain appellant's burden of persuasion. See *Seidman v. State*, 230 Md. 305, 324. In *Sizemore v. State*, 5 Md. App. 507, 511; we reviewed prior Maryland cases and stated the rule to be that the burden is on an accused to show that he has been "prejudiced by adverse publicity and that the *voir dire* examination of prospective jurors . . . would not be adequate to assure him a fair and impartial jury." See also *Laws and Dorman v. State*, 7 Md. App. 84, 86-87. For reasons unexplained, the transcript of the voir dire examination and jury selection are not in the record. The burden to provide such transcript is also appellant's if he intends to rely thereon. Md. Rule 1026 a 2 places the burden upon appellant to provide "a transcript of all the testimony." Thus, in the absence of any jury selection testimony in the transcript, he may not argue for reversal based thereon. *Cf. Harris v. State*, 11 Md. App. 658, 664.

The Court of Appeals in *Downs v. State*, 111 Md. 241, 251, citing 4 Ency. P. & P. 434, said that:

> " 'Facts must be shown from which the Court can deduce the conclusion that the ground relied on for the change actually exists; and, as a rule, mere belief, opinions or conclusions will not be sufficient to warrant the Court in exercising its power, unless the information upon which the belief is founded, or the grounds upon which the opinions or conclusions are based, are sufficiently shown.' " (Emphasis added).

Md. Rule 738 b places the burden on the moving party "to make it satisfactorily appear to the court that such suggestion [of removal] is true, or that there is reasonable ground for the same." Quite obviously it did not

"satisfactorily appear to the court" that appellant had reasonable grounds for removal.

> "If the mere opportunity for prejudice or corruption is to raise a presumption that they exist, it will be hard to maintain jury trial under the conditions of the present day." *Holt v. United States*, 218 U. S. 245, 251.

In the absence of evidence to show that the court below acted arbitrarily and thereby abused its discretion in refusing the right of removal under the Maryland Constitution, we cannot say that the removal should, or should not, have been granted, and we thus affirm the action of the lower court. *Larch v. State*, 201 Md. 52, 55-56; *Auchincloss v. State*, 200 Md. 310, 314; *Allers v. State*, 144 Md. 75, 78-79.

## II

> "Whether or not the Court erred in Denying the Motion of the Defendant to summon Dr. Sauer, Psychiatrist from Clifton T. Perkins State Hospital?"

Appellant complains that he had entered a plea of insanity and that this issue should not have been withdrawn from the jury. Presumably the judge decided the question based on a report from Clifton T. Perkins Hospital, signed by the Superintendent, Dr. Sauer. However, once again, the record is deficient in that it does not contain the report, but only allusion thereto in the trial judge's opinion. We repeat our admonition of appellant that he is responsible for the record upon which he requests appellate review. Any material not included in the record will not be presumed to be unfavorable to the State.

In *Strawderman v. State*, 4 Md. App. 689, 697, we pointed out that:

> "(1) a man is presumed to have been responsible for criminal conduct and sane at the time of such conduct *until*, after the filing of a proper plea, there is adduced proof that he lacked substantial capacity

either to appreciate the criminality of his conduct
or to conform his conduct to the requirements of
law. . . ." (Emphasis added).

This rule clearly places the burden upon appellant to adduce
such evidence. We went on to say that, procedurally, the
court should determine *preliminarily:*

" . . . whether the proof adduced in support thereof
is sufficient to raise a doubt as to the sanity of the
accused, as defined, in the minds of reasonable
men." *Id.* at 698. (Footnote omitted).

We noted in *Greenleaf v. State,* 7 Md. App. 575, 578 that any
such determination should be predicated upon reasonable
medical certainty and that evidence of some undefined
mental disorder or instability is insufficient to overcome the
presumption of sanity, citing *Jenkins v. State,* 238 Md. 451;
*Bradford v. State,* 234 Md. 505.

Here the appellant produced *no* evidence of insanity. The
doctor's report submitted to the court was not introduced
into evidence because the doctor was not present and counsel
could not agree to stipulate to its admission. Appellant
complains that at the hearing on the preliminary question of
sanity, the court declined to defer its opinion so as to enable
appellant to subpoena Dr. Sauer.

Considering the fact that appellant waited until the day of
the trial to request the subpoena of Dr. Sauer, the court did
not abuse its discretion in declining that request.
Furthermore, it was appellant's burden to produce sufficient
proof to surmount the presumption of sanity and the fact
that the State had subpoenaed, but not called, Dr. Sauer
cannot be relied upon to meet that burden. In the absence of
*any* evidence of insanity produced by appellant, he must be
presumed sane and no issue as to his sanity should have
been submitted to the triers of fact.

## III

"Whether or not the Court erred in Denying the
Motion of the Defendant to withdraw a Juror and

declare a mistrial on the grounds that the State's Attorney in his opening statement made specific reference of sexual relations with the witness and perverted or unnatural sex acts which could have no bearing on the charges involved in the case?"

We decline to respond to this question because a transcription of the opening statement is not included in the record on appeal. *Harris v. State,* 11 Md. App. 658, 664.

## VII

"Whether or not the Court erred with respect to all testimony as to Debbie Turner's statement about the blackouts?"

Questions IV, V and VI, which we have declined to answer for lack of argument, all relate to the questions of appellant's mental condition and history of "blackouts," presumably resulting from an accident in which he had been involved. The short answer to the scattergun contention contained in question VII is that the mental condition of appellant cannot be made a jury question indirectly when he has failed to overcome the presumption of sanity as discussed above. The fact that appellant suffered from "blackouts" prior to the incident giving rise to his conviction, had no bearing on his guilt or innocence apart from the issue of insanity.[3] Moreover, the testimony appellant's trial counsel sought to elicit, relating to conversations about appellant blacking out at the time the crime was committed, was clearly hearsay.

## IX

"Whether or not the Court erred in admitting the report of Russell Wilhelm with respect to the firing of the gun?"

The ballistics expert, Russell Wilhelm, testified positively

---

**3.** Appellant is not charged with a crime to which such a physical condition might be a defense as is the case in the crime of manslaughter where the charge may be reduced to involuntary manslaughter by introducing testimony of a history of dizziness and blackouts. Carter v. State, 376 P. 2d 351.

that the weapon offered by the State as the murder weapon had fired the cartridges from which casings were found at the scene. Appellant's argument seems to be that the report of the expert should not have been admitted into evidence because the chain of custody of the gun offered as the murder weapon was not so complete as conclusively to preclude any possibility of tampering with the weapon. The Court of Appeals has held that the chain of custody must be such as to show with:

> " . . . reasonable probability that no tampering occurred." *Breeding v. State,* 220 Md. 193, 199.

We have followed that guideline consistently, *e.g., Avey v. State,* 1 Md. App. 178, 187; *Plumley v. State,* 4 Md. App. 671, 680; *Smith and Nelson v. State,* 12 Md. App. 130, 134, and do so once again. It should be pointed out that a reasonable probability that no tampering occurred does not require a foreclosing of every possibility as a prerequisite to admissibility of evidence. If that were the rule, trial time would be unnecessarily prolonged without purposeful results.

In the case under consideration, a State trooper testified that he went to Memphis, Tennessee, with Debra Turner and recovered the pistol from a store where Turner had seen appellant sell it. After recovering the pistol, along with its gun belt and holster, he explained:

> "I brought them back to the State Police Barrack, where they were placed in the evidence locker for a period of time. And they were later transported to Mr. Wilhelm in Pikesville at the Ballistics Laboratory."

Thereafter, Mr. Wilhelm testified that those items were secured while awaiting the ballistics tests and examination which he later conducted.

> "Q Okay, sir. Now, Doctor, after — or Mr. Wilhelm, after you received the items, you kept them in your custody is that correct?
> A They have been secured in the back of the

State Police Lab where we have a property room connected to a burglar alarm, only my assistant and I have keys except for a master key retained by the captain of the police academy, who keeps his master key in a safe.

Q And what did you do with those items ultimately then, sir?

A They were all turned over to the State's Attorney yesterday morning."

We agree with the ruling of the trial judge, that the testimony showed that there was no reasonable probability that tampering occurred.

Furthermore, it is highly improbable that tampering could create ballistics markings which would cause the weapon to score identically the cartridge cases so as to correspond with the markings of those cartridges found at the scene. Such tampering would be more likely to provide distinguishing characteristics than identical ones, since the tamperer would have to precisely recreate within the weapon's chamber, scores or metal chips which would, upon firing the test weapon, create markings on the test cartridge cases identical to those on the cartridge cases found at the scene.[4] Such precise "tampering" is itself most improbable if not impossible.

---

4. The expert explained the procedure for identifying the cartridge casings by their markings:

"The stria that exists on either a bullet or a cartridge case are created by the action of the weapon at the time of discharge. The bullet turns over in a .22 at a little over fifty thousand revolutions per minute. This is caused or created by lands and grooves, raising indented positions within the barrel. The barrel is first bored out and then a broach is run through and it creates the twist. So the bullet in effect becomes a small gyroscope as it travels through the air. Now in the creation of these lands and grooves there will be minute chips of steel that will be removed from the barrel that leave individual stria, just as individual as the stria that exists from a person's fingerprints, on the bullet having passed through the barrel that takes on the signature. The same thing exists with cartridge cases in the finishing of the breech block of a weapon machine processes such as filing take place that create very fine striations on the breech block, that at the time of recoil the cartridge case is forced back against the block, and the case in effect acts as a small piston that pushes the breech block rearward

We find no error in the admission of the pistol or of the testimony of the expert.

## X

"Whether or not the Court erred in admitting the unsigned statement of the Defendant, read by William F. Baker, County Investigator for Allegany County?"

Appellant's sole complaint is that he did not sign a statement made by him to an investigator. The investigator was permitted to read the question and answer statement as reflecting his recollection of "the sum and substance" of appellant's answers. We know of no rule of law that precludes an oral confession, admission, or statement of an accused from being introduced because it was not signed. Any variation between that which the investigator claimed appellant said, and that which appellant claimed he said, is to be reconciled by the jury. No question of voluntariness is raised. Appellant only argues that he did not say what the investigator claimed he said. We find no error.

## XI

"Whether or not the Court erred in not allowing the Defense Witness to testify with respect to a statement made by Debbie Turner concerning her relations with the Deceased?"

The sole purpose for which appellant sought to introduce this testimony was to impeach the testimony of Debra Turner. The question at issue was directed to appellant's

---

and then extracts and ejects from the action in the cartridge case. The next loaded cartridges — cartridge lies on a magazine, and as the block starts to home or forward itself it strips from the magazine the next loaded cartridges, inserts it into the chamber preparatory to the next firing.

Examination of the three cartridge cases reveals stria that was matched against the stria of the test cartridge cases fired in the weapon. So that I could say these three cases had been fired in this gun."

uncle, Lawrence E. Rice, who was called as appellant's first witness.

> "Now did there come a time when there was any discussion with respect to her [Debra Turner's] relationship with Coy Huffman, the deceased in this case?"

The court sustained the State's objection to this question based upon the holding in *Smith v. State*, 273 Md. 152, 158-159, that extrinsic evidence which is *collateral* and *irrelevant* may not be used to impeach a witness. The trial judge was correct. On cross-examination, Debra Turner had denied hearing any discussion between Rice and appellant relative to her sexual relations with anyone.

> "Q I believe that you testified on direct examination that you did not hear any discussion between the Defendant and his Uncle Lawrence when you came back from the south and met with Uncle Lawrence outside of Baltimore?
>
> A That is correct.
>
> Q Now as a matter of fact isn't it true that you and Eddie, Uncle Lawrence and his aunt sat in the house and discussed this?
>
> A No.
>
> Q It is not?
>
> A No.
>
> Q Isn't it true that Eddie said to his Uncle Lawrence in your presence that you had told him that your brother, the decedent, and several other men had been having sexual relations with you at the trailer in Flintstone and that's why you left?
>
> A No.
>
> Q That was not said in your presence?
>
> A No. Because I was in the bathtub at the time.
>
> Q What's that?
>
> A I was in the bathtub at the time they was talking about it.

Q Let me see if I can refresh your recollection. Wasn't that conversation in fact at their dining room table in the back of the house, in the rear of that home?

A No. Eddie was talking to his uncle. I was in the bathtub.

Q And such a conversation never took place?

A It might have took place behind my back, but I never heard it.

Q In your presence?

A No.

Q Well you said that you heard no conversation between the Uncle and Eddie. How long were you in the house?

A Overnight."

Appellant's question to Rice was intended to contradict her denial that she had heard such a discussion.

"Now is your purpose in the line of questioning that you are following to have this witness testify to something that would contradict the Turner girl's testimony as to the — what conversation transpired in the house in Sykesville or outside of Baltimore?

MR. BERRY: Yes, Your Honor. It would be in direct contradiction of what she said on the stand when put on the stand by the State."

It is well established that a witness may not be impeached by extrinsic evidence on a collateral matter. *Harris v. State*, 237 Md. 299; *Kantor v. Ash*, 215 Md. 285. For the purposes of this rule,

" . . . the test of collateralness — whether the fact as to which the error is predicated could have been independently shown in evidence — actually means whether that fact could have been shown in evidence from the standpoint of relevancy." *Smith v. State*, 273 Md. at 162.

Thus, the issue we must decide is, whether, in addition to contradicting previous testimony, the fact sought to be elicited by the question is relevant. "Evidence is relevant when it tends to show that a fact in controversy did or did not exist." 1 *Wharton's Criminal Evidence*, § 151 at 272. The fact appellant sought to elicit from Rice was whether Debra had heard a discussion between him and appellant. Her response to the question posed could not tend to prove or disprove the fact in controversy, *i.e.*, the guilt or innocence of appellant. It could do no more than establish or diminish the believability of a prosecuting witness by contradicting her assertion that she had not heard any discussion. *Smith*, *supra*, 273 Md. at 162, states that the test " . . . is whether the fact as to which the error is predicated is relevant *independently of the contradiction;. . .*" (Emphasis added).

Having been ruled against on the use of such testimony for impeachment, the appellant sought an alternative route:

> "MR. BERRY: Well, of course, Your Honor is saying that it isn't admissible on the issue of credibility. We believe it's material on the issue of whether or not Debbie Turner was in fact an accomplice who counseled, aided or abetted the homicide within the meaning of the statute, and that that is a material issue in the case. And whether or not her testimony is corroborated in a case in which the Jury at this point with respect to the evidence might or might not find that her testimony is correct as to who actually fired the shots in this case, there being no dispute whatever that a man was shot."

The judge dismissed this last effort on the ground that there was no evidence or assertion whatever at that point in the case that Turner was an accomplice. Moreover, we find that whether or not she heard a conversation between Rice and appellant at a time and place remote from the murder is not relevant to the issue of whether or not she was an accomplice to the murder.

## XII

"Whether or not the Court erred in overruling the objection as to a witness seeing a gun in the trunk of the Defendant's automobile?"

Appellant complains that testimony that a service station mechanic had observed a pistol in the trunk of appellant's car should not have been admitted. Appellant contends that the testimony was irrelevant and improperly prejudicial. We do not agree.

The testimony showed appellant to have been in possession of a handgun similar to the murder weapon on the day of the murder. It further corroborated Debra Turner's testimony that appellant had taken the murder weapon from the trunk of his car shortly after he abducted her and before the murder. The testimony made the inference of guilt more probable than it otherwise would have been and was therefore relevant and admissible. C. McCormick, *Evidence*, § 185 at 437.

## XIII

"Whether or not the Court erred in overruling the objection to a line of questions to Debbie Turner with respect to an application for an assault warrant against the Defendant?"

On cross-examination, appellant attacked the credibility of Debra Turner by questions calculated to show that she was not really afraid of appellant as she had contended. He sought to characterize their relationship as a loving one and to contradict her testimony that she had been abducted and had stayed with appellant out of fear.

"MR. KELLY: Perhaps I missed something, but it seems to me you were asking her constantly you were afraid of him why didn't you leave him.

"MR. BERRY: I have that right. She's under cross-examination."

The State contended that on re-direct:

> "MR. KELLY: And I have the right to rehabilitate her. That would be the proffer, Your Honor. The State would proffer to show by an application for a summons signed by Debbie Turner on September 11th, 1974, that he had assaulted her, that she was afraid of him, that he accused her of running around."

Although the court did not permit the introduction of that application, it did permit questions regarding it which tended to prove justification for the fear of appellant to which Turner testified:

> "Q You've indicated that there were several occasions when you left Mr. Van Meter and returned to him. Directing your attention to September 11th, 1974, did you have occasion to go to the District Court of Maryland and on that time apply for an application for a summons against Clinton Van Meter for assault?
>
> A Yes.
>
> MR. BERRY: We object, Your Honor.
>
> BY THE COURT: Objection will be over-ruled.
>
> Q At that time did you indicate that you were afraid of Mr. Van Meter?
>
> MR. BERRY: This is a leading question, Your Honor.
>
> BY THE COURT: Sustained.
>
> Q Debbie, do you recall what you told the District Court Commissioner at the time you applied for a warrant for a summons?
>
> A Told him he had been. . . .
>
> MR. BERRY: That would be answered yes or no, Your Honor.
>
> A Yes.

Q And what did you tell him?

A I told him he kept on slapping me."

Numerous attempts to elicit testimony relating to prior statements of her fear and causes therefor were thwarted by objections which were sustained as to the form of the questions. The State was then permitted to refresh her recollection with the application. The State proceeded:

"Q Okay. Then my question to you is, In addition to indicating that Mr. Van Meter had struck you, did you tell him anything else with regard to Mr. Van Meter?

A Yes.

Q And what else did you tell him?

A That I was afraid of him."

The only claim of error by appellant here [5] is that such "line of questions" on redirect examination exceeded the scope of the cross-examination and was inadmissible for that reason. As indicated above, we do not agree and find that the redirect examination was directly aimed at rehabilitating the witness from appellant's assault on cross-examination.

*Judgments affirmed.*

---

5. Had appellant raised a hearsay argument, the resolution would have been less apparent. Suffice to say that the out-of-court statement was admissible, not having been offered for the truth of the thing asserted, but rather to show that what was asserted then is the same as what is being asserted now. Borza v. State, 25 Md. App. 391, 410, *cert. den.*, 275 Md. 746.