615 A.2d 1226

**Larry Eugene WHACK**

v.

**STATE of Maryland.**

**No. 284, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

Nov. 27, 1992.

Robert W. Mance, Washington, D.C., for appellant.

Thomas K. Clancy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and John L. Scarborough, State's Atty. for Cecil County of Elkton, on the brief), for appellee.

Argued before WILNER, C.J., and ALPERT and FISCHER, JJ.

ALPERT, Judge.

Appellant, Larry Eugene Whack, was convicted by a Cecil County jury of (1) possession with intent to distribute cocaine, (2) conspiracy to possess with intent to distribute cocaine, and (3) conspiracy to smuggle 28 grams (or greater)

of cocaine. From judgments entered thereon, he appeals, asking us to resolve five issues:

   I.  Whether the trial court's denial of a request for a continuance was an abuse of discretion.

  II.  Whether the trial court improperly denied a motion to suppress.

 III.  Whether Whack was deprived of a fair trial because of the improper admission of hearsay evidence.

 IV.  Whether Whack was deprived of a fair trial because of the admission of unintelligible tape recordings.

  V.  Whether the trial court improperly denied Whack's Motion for Judgment of Acquittal.

We answer each of these questions in the negative, and therefore affirm.

## BACKGROUND

On May 15, 1991, Larry Eugene Whack was arrested. He was subsequently indicted—and convicted—on several drug-related crimes. The relevant circumstances surrounding his conviction follow.

On the morning of May 15, 1991, Keith Watkins and Joey Sampson were driving a 1985 blue Pontiac Sunbird south on Interstate 95 from New York City through Maryland, allegedly in excess of the posted speed limit. Accordingly, Maryland State Trooper First Class John Appleby effected a traffic stop of the vehicle. Appleby testified at trial that, following the stop, Sampson voluntarily admitted to Appleby that (1) there was cocaine in the car, (2) this cocaine was located in the side panel of the front passenger door [1], and (3) they (Watkins and Sampson) had traveled to New York City specifically to buy the cocaine for Whack. At the scene, Watkins also admitted to Appleby that the purpose of the New York trip was to obtain the cocaine for Whack.

---

1. Indeed, a large quantity of cocaine was subsequently discovered hidden in the front passenger side door panel of the vehicle.

Watkins and Sampson were both arrested and transported to the state police barracks.

At the barracks, Deputy Timothy McDonald of the Cecil County Sheriff's Department interviewed Watkins. McDonald testified at trial that, during this interview, Watkins reiterated the reason for his and Sampson's excursion: "[Watkins said that he and Sampson] were coming from New York with a quantity of cocaine for Larry Whack, and [that] the sole purpose of the trip was to purchase cocaine for Larry Whack in New York City and to bring it back to him in Prince George's County."

Also at the barracks, the police solicited and received Sampson's consent (both orally and in writing) to permit the police to record a telephone call that he would make to Whack [2]; during the call, Sampson would tell Whack that the car transporting Sampson and Watkins had broken down, that it was currently being serviced on the Chesapeake House property [3], and that the men needed a ride back to Prince George's County. Sampson made the telephone call as agreed, and Whack assented to meet Sampson and Watkins at the Chesapeake House Texaco station. Moreover, Sampson agreed to wear a body wire so that, upon Whack's arrival at the Texaco station, the police could record and monitor Sampson's and Whack's in-person conversation.[4]

Whack appeared at the Texaco station at approximately noon that day (May 15, 1991). Police observed Whack entering the garage; once inside, Whack spoke briefly with Sampson and Watkins. Shortly thereafter, and pursuant to

---

2. Earlier, Watkins had declined the offer that Sampson accepted.

3. The Chesapeake House is a well-known rest stop on Interstate 95 in Cecil County, Maryland; on the site there is both a restaurant and a Texaco gasoline service station.

4. Although the tapes and transcripts of both Sampson–Whack conversations (telephone and in-person) were eventually introduced and accepted into evidence during Whack's trial, Whack has failed to make either the tapes or the transcripts a part of the record on appeal.

a mechanic's request, the men (Whack, Sampson, and Watkins) pushed the Sunbird out of the garage. Police then watched as Whack began tampering with the passenger side car door, as though (according to Appleby) Whack was trying to get inside it. Whack then kneeled down and, as he pulled the upholstery away from the metal part of the door, he commenced reaching down inside the door panel. It was at this point that Whack was arrested.

A four count indictment was sent down on June 19, 1991, and correspondingly Whack was charged as follows:

I.   Possession with intent to distribute cocaine.

II.  Possession of cocaine.

III. Conspiracy to possess with intent to distribute cocaine.

IV.  Conspiracy to smuggle 28 grams (or greater) of cocaine.

A trial on the merits was set for late October, 1991.

On October 2, 1991, Whack moved to suppress his May 15, 1991 telephone conversation (as well as the in-person conversation) with Sampson "and any evidence derived [therefrom]." Whack based his motion on a single contention, *i.e.*, "That the said telephone and oral conversations were illegally intercepted without the consent of the parties involved[.]" In particular, Whack contends that, in violation of Md.Cts and Jud.Proc.Code Ann. ["CJ"] § 10–402(c)(2), Sampson did not actually consent to interception of the conversations [5].

---

5.  CJ § 10–402(c)(2) provides as follows:
     It is lawful under this subtitle for an investigative or law enforcement officer acting in a criminal investigation or any other person acting at the prior direction and under the supervision of an investigative or law enforcement officer to intercept a wire, oral, or electronic communication in order to provide evidence of the commission of ... dealing in controlled dangerous substances, ... or any conspiracy ... to commit any of these offenses, where the person is a party to the communication or *one of the parties to the communication has given prior consent to the interception.*
     (Emphasis added.)

A hearing on the suppression motion was held on October 16, 1991 (Edward D.E. Rollins, Jr., J.). On the day of the hearing, but before the hearing itself had actually commenced, defense counsel informed the trial court that—despite being properly subpoenaed—Sampson had failed to appear. From Whack's perspective, Sampson's testimony was critical to his motion to suppress; *i.e.*, without Sampson's own testimony, he could not effectively prove lack of Sampson's actual consent. The court volunteered: "If you want, I'll issue a body attachment and have him brought here." Defense counsel responded: "I would request that your honor."

Next, in deference to defense counsel's request, the trial court granted an approximate two-hour recess so that Whack might have some time to procure Sampson. Nevertheless, the record does not reflect that defense counsel (or, for that matter, Whack himself) made even the slightest attempt to contact or ascertain the whereabouts of Sampson during that hiatus. Thus, when the trial court reconvened 116 minutes later, Whack was still without his "star" witness. Accordingly, defense counsel moved the court for a continuance which the court, without much elaboration, denied.

Without Sampson's corroborating testimony, defense counsel was reduced to making an argument by analogy, *i.e.*, since Watkins (according to his own testimony) had been allegedly offered inducements to cooperate with the wire-tapping and body-wiring plan, so too was Sampson probably offered similar inducements. Defense counsel's argument was supported by the following testimony at the suppression hearing:

[WATKINS:]

As [Sampson and I] got to the state police barracks, [the officers] told me what charge that I was, I was facing, and they told me how many years that I was facing. Then they asked me, if I help them they'd help me, by telling me that they would give me an alternative of four years and a $2,500 bond, being released on

my own recognizance, as opposed to thirty years and a $100,000 bond.

So when they told me that, I cooperated with them so that I could get out.

[MR. ARAGONA (defense counsel):]

Did [the officers] make similar statements to Joey Sampson in your presence?

[WATKINS:]

Yes; as far as I know, yes.

Toward the conclusion of the hearing, defense counsel summarized his argument: "And I want to suggest to the Court that there's every reason to believe that Joey Sampson was similarly hit, as Mr. Watkins was, with these threats—and I would construe them as threats—if you don't cooperate, you'll get a $100,000 bond."

Nevertheless, the trial court denied Whack's suppression motion. In so doing, the court stated as follows:

I think there's substantial evidence before the Court that the young Sampson gentleman signed a consent, that he did so willingly, and that he voluntarily took part in the intercept by telephone with this defendant, and I deny the motion of suppress.

Prior to the court's ruling, defense counsel asked the judge "to reserve ruling until such time as we hear from Mr. Sampson directly." The motions judge responded:

I'm not going to reserve on any ruling. It's not my responsibility to see that the people are here. It's the attorneys' responsibility to summons their own witnesses in.

Well, you did, apparently, but you come in today and there was—you say you want a bench warrant, or a body attachment when the thing's ready for a hearing, and I don't even see, I don't believe—September 27th, a subpoena was issued. I don't see anything in here whether he was served or not.

After the ruling, the court, at the request of defense counsel, did indeed order the issuance of a body attachment for Sampson.

At 9:00 p.m. the next day, *i.e.*, October 17, 1991, Sampson was murdered in Prince George's County, and thus he was rendered unavailable for trial.

On October 23, 1991, a jury trial on the merits was held. During the trial, the prosecutor elicited as part of his case-in-chief the following testimony with regard to statements made by the late Mr. Sampson:

[BY MR. KEMP, prosecutor:]

> And specifically with regard to Mr. Sampson, did he make a statement to you [at the scene of the arrest]?

[APPLEBY, on direct examination:]

Yes, he did.

Q: And what was that statement?

A: I asked Mr. Sampson—

\* \* \* \* \* \*

MR. ARAGONA: I would object on the basis that [this] calls for hearsay, Your Honor.

THE COURT: I'm going to overrule the objection. Go ahead.

MR. ARAGONA: Your Honor, I would just ask for a continuing objection to any statements made.

THE COURT: Understand. For the record, you're protecting your client, rightly so.

\* \* \* \* \* \*

Q: Now, Trooper Appleby, at that time what, if anything, did Mr. Sampson relate to you?

A: Mr. Sampson advised that [he and Watkins] went to New York to pick up this cocaine and bring it back and deliver it to a subject by the name of Larry Whack who lives in P.G. County.

Q: And at that time, did he relate to you anything more than that?

A: No, he did not.

Also during the trial, and consistent with the previous denial of Whack's motion to suppress, the prosecutor successfully moved into evidence the tapes and transcripts of the Whack–Sampson telephone and in-person conversations. Although Whack has failed to make either the tapes or the transcripts available to us as a part of the record on appeal, we may nevertheless glean part of the Sampson–Whack conversations from the few direct references made to them in that portion of the record which we do have, to wit:

*[From the transcript of the Whack–Sampson telephone conversation:]*

WHACK: You guys got it?

SAMPSON: Yeah, we got the shit.

\* \* \* \* \* \*

*[From the transcript of the Whack–Sampson in-person conversation:]*

WHACK: You all left it [in the car]? \* \* \* \* I don't know why you did, if the window fell down they might have tried to go up there and fix it and that would have been fucked up, and they would have called, and someone would of kept it \* \* \* \* [S]omeone might have called the fucking man on your ass.[6]

At the close of the State's case, defense counsel moved for a judgment of acquittal, which was denied. On October 24, 1991, the jury convicted Whack of counts I, III, and IV of the indictment, which are more fully set out above. Following a sentencing hearing held on February 20, 1992 (wherein counts III and IV were merged), Whack was sentenced to (with respect to Count I) fifteen years, the last five years of which were suspended, probation upon release, and (with respect to Count III) fifteen years, the last five years of which were suspended, concurrent to Count I.

---

6. The State offered uncontroverted testimony to the effect that in the drug trade, "shit" referred to drugs, in this case cocaine, and "the fucking man" referred to the police.

## *I. Continuance*

■ Whack contends that Sampson's testimony was "critical" to support his motion to suppress the tapes and transcripts of the Whack–Sampson conversations. Thus, when Sampson failed to appear at the hearing on the motion, defense counsel moved for a continuance, which was denied. Whack now challenges that denial as being improper. We disagree.

We begin with the basic proposition, recently reiterated in *Burgess v. State*, 89 Md.App. 522, 598 A.2d 830 (1991), *cert. denied*, 325 Md. 619, 602 A.2d 710 (1992), that "[r]ulings on requests for continuances are within the sound discretion of the judge and will not be disturbed on appeal absent an abuse of that discretion." 89 Md.App. at 534, 598 A.2d 830 (*citing Beachem v. State*, 71 Md.App. 39, 55, 523 A.2d 1033 (1987)). In *Wright v. State*, 70 Md.App. 616, 522 A.2d 401 (1987), we held

To show such an abuse of discretion, the party who requests the continuance must show:

"(1) that he had a reasonable expectation of securing the evidence of the absent witness or witnesses within some reasonable time; (2) that the evidence was competent and material, and he believed that the case could not be fairly tried without it; and (3) that he had made diligent and proper efforts to secure the evidence."

70 Md.App. at 623, 522 A.2d 401 (*quoting Jackson v. State*, 288 Md. 191, 194, 416 A.2d 278 (1980) (quoting an earlier *Jackson v. State*, 214 Md. 454, 459, 135 A.2d 638 (1957), *cert. denied*, 356 U.S. 940, 78 S.Ct. 784, 2 L.Ed.2d 816 (1958))).

We hold that Whack has failed to satisfy each element of the three-prong test set forth in *Wright*.

First, Whack failed to demonstrate that he had a reasonable expectation of securing the evidence of the absent witness within some reasonable time. Indeed, in his brief before this court, Whack's entire argument (vis-a-vis his compliance with this first prong) is the allegation that

"Defense counsel served Sampson with a subpoena [, ... and] it would have been a simple matter to dispatch a sheriff's deputy to bring him to court." Whack did not state that he knew or had reason to know of Sampson's whereabouts on the date of the suppression hearing, nor did Whack state that he knew or had reason to know the reason for Sampson's absence. Thus, the bald assertion that bringing Sampson to court would be a "simple" task for a sheriff's deputy, is insufficient to produce the requisite reasonable expectation that Whack could secure Sampson's testimony within a reasonable time.

Second, Whack failed to demonstrate that Sampson's testimony was competent and material. At the suppression hearing, defense counsel proffered that, had Sampson testified, he would state that the officers "coerced" or "threatened" him into consenting to the recordation of his conversations with Whack (thereby vitiating the voluntariness of Sampson's consent). In the context of the case *sub judice*, defense counsel described the scope of the alleged threats as follows:

> there's every reason to believe that Joey Sampson was similarly hit, as Mr. Watkins was, with these threats—and I would construe them as threats—if you don't cooperate, you'll get a $100,000 bond.

As will be more fully discussed below in Section II of this opinion (re: Whack's motion to suppress), these contentions—even if believed by the trial court to be true [7]—are insufficient under Maryland law to vitiate consent. We point out, however, to the motions judge that the appellant, upon issuing a subpoena, was not "responsible for [his] own witness...." and it is the responsibility of the court to issue

---

7. In direct countervention to defense counsel's argument (as well as Watkins' testimony), the police denied offering any incentives or inducements to Sampson in order to secure Sampson's consent to permit the interception of the conversations at issue. Therefore, there arises a dispute as to an issue of fact. As noted, the Court concluded at the suppression hearing that Sampson's consent was willing and voluntary.

a body attachment (upon request) where a duly summoned witness fails to appear. Appellant had a constitutional right to compulsory process. *See Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967).

Finally, Whack failed to demonstrate of record that he made diligent and proper efforts to secure Sampson's testimony. The hearing did not commence until 11:06 a.m. Shortly thereafter, and in deference to defense counsel's request, the trial court granted an approximate two-hour recess so that Whack might have some time to procure Sampson. Nevertheless, the record does not reflect that defense counsel (or, for that matter, Whack himself) made even the slightest attempt to call, locate, or contact Sampson during that hiatus. Whack's request for the court to "initiate judicial compulsory process," while relevant, fails under the circumstances of this case to demonstrate or establish the requisite diligence necessary to reverse the trial court.

We therefore hold that the trial court did not abuse its discretion in denying Whack's motion for a continuance.

## II. Motion to suppress

The primary issue at the hearing on the motion to suppress was whether, in light of the totality of circumstances, Sampson had voluntarily consented to permit the police to intercept and record the Sampson–Whack conversations. After considering the evidence properly before it, the trial court found that Sampson *had* indeed voluntarily consented to the interception. Whack now challenges that finding, essentially contending that the promises and inducements (alleged by Whack to have been made to Sampson), *per se* vitiate Sampson's permission to be taped. We disagree.

We begin our analysis by making a necessary, yet subtle, distinction: Maryland law differentiates between two standards of "voluntariness." On the one hand, Maryland recognizes a standard of voluntariness with respect to *crimi-*

*nal confessions.* As the Court of Appeals held in *Hillard v. State*, 286 Md. 145, 406 A.2d 415 (1979),

[F]or more than one hundred years [the Court of Appeals] has adhered to the tenet that, with regard to fairness in the conduct of a trial, Maryland criminal law requires no confession or other significantly incriminating remark allegedly made by an accused be used as evidence against him, unless it first be shown to be free of any coercive barnacles that may have attached by improper means to prevent the expression from being voluntary.

\* \* \* \* \*. \*

While any decision concerning the voluntariness of a statement necessarily must rest on the facts of the case involved, we nonetheless find that, with regard to promises and other similar forms of inducement designed to elicit a defendant's confession, this Court, in a series of cases that stretch back into the last century, has established certain boundaries within which police conduct must be contained.

286 Md. at 150–52, 406 A.2d 415 (footnote omitted).

■ Thus, the boundaries of this first standard of voluntariness are rather clear: a *defendant's confession*, in order to be used as evidence against him (i.e., the defendant who made the statement), must be free from promises and inducements. It is abundantly clear that, in the case *sub judice*, we are neither dealing with a defendant's confession, nor seeking to use an involuntary action as evidence against the one who allegedly acted involuntarily. Therefore, promises to reduce bail (such as those alleged by Whack to have been made to Sampson), which may act to vitiate the voluntariness of a defendant's confession, are wholly inapplicable.

On the other hand, Maryland recognizes a different standard of voluntariness with respect to so-called consent searches. The standard of voluntariness for consent searches to be applied by the trial court, as well as the standard by which an appellate court shall review the trial

court's determination of voluntariness, was recently reiterated by the Court of Appeals in *McMillian v. State*, 325 Md. 272, 600 A.2d 430 (1992), to wit:

> The State bears the burden of proving that the consent [to search] was freely and voluntarily given, and not the result of *duress or coercion*. Whether the consent was voluntary "is to be decided in light of the totality of all the circumstances." Moreover, the State must prove voluntariness by a preponderance of the evidence. This determination "ordinarily involves determination of a question of fact." Although we are required to make an independent constitutional appraisal of the record, the trial court's factual finding of voluntariness is not to be set aside unless clearly erroneous.

325 Md. at 284–85, 600 A.2d 430 (*quoting*, respectively, *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973) and *Gamble v. State*, 318 Md. 120, 125, 567 A.2d 95 (1989)) (citations omitted; emphasis added).

Indeed, this distinction (as between the different standards for "voluntariness") is both critical and subtle, and thus bears repeating: In all instances, the State bears the burden of proving that the consent or confession was given by the defendant freely and voluntarily. To eviscerate the state's showing of "voluntariness" vis-a-vis a Maryland defendant's *confession*, the defendant need only show (at a minimum) that promises or inducements were made to him; *i.e.*, promises or inducements are *in and of themselves* sufficient to eviscerate the voluntary nature of a Maryland defendant's confession. That is the holding in *Hillard*.

■ In contrast, however, the mere fact that the State used promises or inducements to acquire a defendant's *consent to search* does *not*, in and of itself, necessarily eviscerate the voluntary nature of the consent. For it is *only* where those promises or inducements, or other attendant circumstances, equate to actual duress or coercion that

the voluntary nature of the consent may be said to have been lost.

■ Therefore, if we conclude (as we do) that the principles applicable to consent searches govern the case *sub judice* [8], then the correct standard to be applied by the trial court was whether—in light of the totality of circumstances—Sampson's consent was given freely and voluntarily. As this issue concerns a question of fact, we will not set aside the trial court's finding unless it was clearly erroneous. Md. Rule 8–131(c). We hold that the trial court applied the correct standard of voluntariness, and in so doing, properly denied Whack's motion to suppress.

### III. Hearsay evidence

During the trial on the merits, and over defense counsel's objection, prosecution witness Appleby testified that "Mr. Sampson advised [me, *i.e.,* State Trooper Appleby] that they [Sampson and Watkins] had gone to New York to pick up this cocaine and bring it back and deliver it to a subject by the name of Larry Whack who lives in P.G. County." Whack contends now, as he did at trial, that this testimony was inadmissible as hearsay, and therefore the trial court erred by admitting it. Whack further contends that, by admitting Sampson's testimony, the trial court ran afoul of the Confrontation Clause of the Sixth Amendment to the Constitution of the United States. We disagree with Whack on both accounts.

We rely, as dispositive precedent, on the Court of Appeals' holding in *State v. Standifur*, 310 Md. 3, 526 A.2d 955 (1987). The *Standifur* case is analogous to the case *sub judice* in that there, as here, the issue presented concerned whether an alleged declaration against the penal

---

**8.** We have held previously that wiretaps are a form of a search. *See, e.g., State v. Graziano,* 17 Md.App. 276, 278, 301 A.2d 36 (1973) (the use of electronic and wiretapping devices to intercept conversation is a search within the meaning of the Fourth Amendment to the Constitution of the United States). As such, the doctrines applicable to searches are equally applicable here.

interest of an unavailable witness, offered by the State against the accused in a criminal trial, (1) qualified under the common law exception to the hearsay rule, and (2) satisfied the Confrontation Clause.

We begin our analysis, as did the court in *Standifur*, by setting forth an historical introduction:

This Court has recognized a declaration against penal interest as an exception to the hearsay rule. This case requires consideration of a specific class of declarations against penal interest—those offered by the State to inculpate a defendant in a criminal case. A declaration against penal interest is excepted from the operation of the hearsay rule by the Federal Rules of Evidence and by a majority of the states. Federal Rule of Evidence 804(b)(3) provides:

The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

\* \* \* \* \* \*

(3) Statement against interest.—A statement which ... at the time of its making so far ... tended to subject [the declarant] to civil or criminal liability ... that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

*Standifur, id.* at 9–11, 526 A.2d 955.

█ Whack does not here challenge that Sampson was unavailable, nor does Whack directly challenge the trustworthiness or reliability of Sampson's declaration[9]. Rather, in his brief before this court, Whack merely argues that Sampson's declaration was made to relieve himself from

---

9. Indeed, the record—including the portions of the Sampson–Whack transcripts appearing therein—reflects a vast amount of corroborating evidence that supports the trustworthiness of Sampson's declaration.

criminal liability, and thus wasn't against Sampson's penal interest [10]. We disagree.

> The Supreme Court has held,

> that when one person accuses another of a crime under circumstances in which the declarant stands to gain by inculpating another, the accusation is *presumptively* suspect[.]

*Standifur, id.* at 14, 526 A.2d 955 (quoting *Lee v. Illinois,* 476 U.S. 530, 106 S.Ct. 2056, 2064, 90 L.Ed.2d 514 (1986)) (emphasis added). The presumption, however, that a declarant's allegedly self-promoting statement is suspect does not, *per se,* render that statement inadmissible or violative of the Confrontation Clause. Rather, as the court noted in *Standifur,* "the particular circumstances surrounding the making of such statements must be carefully examined [for trustworthiness]." *Id.,* 310 Md. at 15, 526 A.2d 955.

We hold that Sampson's declaration was reliable and trustworthy under the totality of the circumstances surrounding the making of that declaration, and therefore we assign no error to the trial court's finding that Sampson's declaration was admissible.

### IV. Unintelligible tape recordings

During the trial on the merits, the prosecution successfully moved into evidence the tapes and transcripts of the Whack–Sampson conversations. Without having made ei-

---

**10.** In his brief before this court, Whack also argues (presumably as an issue of law) that "in order for a declaration against penal interest to apply to Whack, Whack must have made a statement. A declaration against interest is created for situations in which a person hears the statement, the person who heard the statement is unavailable, and that statement is offered against the declarant." Whack, however, offers no legal authority for this argument.

We hold, with only brief elaboration, that Whack has totally misconstrued the nature of the exception. A declaration against penal interest, as we discussed in the text of this opinion, applies when the *declarant* is unavailable, and *not* when the "hearer" of the statement is unavailable. There is also no requirement that the statement, to be admissible, must be used against the declarant.

ther the tapes or the transcripts a part of the record on appeal, Whack now contends that (1) the tapes were not properly authenticated, and (2) much of what was recorded on the tapes was unintelligible; therefore, Whack argues, the tapes should not have been entered into evidence. Whack has failed to preserve these issues for appeal, and therefore we need not consider them.

With regard to the tapes and transcripts at issue, the record reflects only one substantive objection made (and therefore preserved) by defense counsel: an objection to the introduction of the transcript of the telephone conversation because that transcript did not match the text of its corresponding audio tape.[11]  At no time did defense counsel

---

11. With respect to the present issue, the record reflects only the following objections made (and therefore preserved) by defense counsel:

*With respect to the tape of the telephone conversation between Sampson and Whack:*

MR. KEMP: If it please the Court, I'd ask this exhibit be admitted into evidence at this time.

THE COURT: Any objection?

MR. ARAGONA: A proffer by the Court that that's the tape? Why don't we listen to the tape and determine if it is in fact the tape?

THE COURT: It's a point very well taken, but is there any marking on the tape?

THE WITNESS [McDonald]: Yes, there is.

THE COURT: Who made the markings?

THE WITNESS: I made the marking on the microcassette, on the original copy.

MR. ARAGONA: I would just—perhaps we could reserve the moving of it until after its heard.

THE COURT: I think I'll allow it.  I have no problem with that. Overrule the objection.

MR. KEMP: So it's in evidence?

THE COURT: Yes.

(T. 98.)

*With respect to the transcript of the telephone conversation:*

THE COURT: Any objection?

MR. ARAGONA: * * * I was supplied a copy, but my concern is that I don't know if that, how accurate that purports to be, and I think we should reserve that, if I can make an objection to the transcript, until after the tape is present and we review it.

     *   *   *   *   *   *

THE COURT: What would be your motive in postponing it [the objection]?

object to the authenticity or the alleged unintelligibility of the audio tapes.

■ Even if defense counsel had properly preserved these issues for appeal, defense counsel's contentions are without merit. First, the record reflects that both of the tapes were adequately authenticated. With respect to the Whack–Sampson telephone conversation, McDonald testified that he (1) monitored and recorded that conversation, (2) heard Whack speak both at the Chesapeake House and post-arrest, and (3) identified the voice on the tape as that of Whack. With respect to the Whack–Sampson in-person conversation, McDonald also identified the voice on the tape as that of Whack; in addition, Corporal Robert Ellis, of the Maryland State Police (Cecil County Narcotics Task Force), testified that he (1) monitored the in-person conversation as it occurred, (2) spoke to Whack post-arrest, and (3) identified the voice on the tape as that of Whack. Thus we hold that the tapes were properly authenticated.

■ Second, with respect to the alleged unintelligibility of the tapes—even if defense counsel had preserved the issue for appeal—we are unable to review this contention because defense counsel has failed to make the tape recordings or the transcripts thereof a part of the record on appeal.

The case of *Van Meter v. State,* 30 Md.App. 406, 352 A.2d 850, *cert. denied,* 278 Md. 737 (1976), is analogous to the case *sub judice* in that there, as here, the appellant failed to make certain transcripts part of the record on appeal. *Van*

--------

MR. ARAGONA: My concern is that I think it will be made clear that not everything that's on the tape is necessarily typed on that paper.
(T. 99–100.)
*With respect to the tape and transcript of the in-person conversation between Whack and Sampson:*
MR. ARAGONA: Are you going to play the tape? * * * I would say play the tape, give them [the jury] the transcript, then ask him [the witness] whatever questions are necessary.
                    *      *      *      *      *      *
(T. 101)

*Meter* involved an issue as to whether the defendant had been prejudiced by certain extrajudicial statements publicly made by the prosecuting witness and her family. In that case we held that

> [f]or reasons unexplained, the transcript of the voir dire examination and jury selection are not in the record. The burden to provide such transcript is also appellant's if he intends to rely thereon. Md.Rule 1026 a 2 [now incorporated into Md.Rule 8–411] places the burden upon appellant to provide a "transcript of all the testimony." Thus, in the absence of any jury selection testimony in the transcript, he may not argue for reversal based thereon.

*Id.* 30 Md.App. at 410, 352 A.2d 850 (citations omitted). *See also Jacobs v. State,* 45 Md.App. 634, 641–42, 415 A.2d 590, *cert. denied,* 288 Md. 737 (1980) (where a tape of a telephone call was played to the jury, and where tape itself was entered into evidence, *held* that burden to include the transcript of tape was clearly upon appellant, and that failure to do so is totally dispositive of appellant's claim which relied on said transcript). We accordingly hold that Whack's failure to produce the relevant tapes or transcripts is similarly totally dispositive of his contention which relies on same.

### V. Judgment of Acquittal

At the close of the State's case, defense counsel renewed his motion for judgment of acquittal, which the trial court denied. Whack now contends that, in denying this motion, the trial court erred. We disagree.

■ When deciding a motion for judgment of acquittal, the appropriate inquiry is not whether the appellate court would have reached a different verdict; "[i]nstead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original).

■ As indicated above, the trial court in the case *sub judice* was presented with the testimony of six witnesses, plus properly admitted tapes and transcripts of both the Sampson–Whack telephone conversation and the Sampson–Whack in-person conversation. In addition, police witnesses watched as the Sampson–Whack in-person conversation took place. Testimony, viewed in the light most favorable to the prosecution, indicated that *all* of the principals involved in the case (*i.e.*, Sampson, Watkins and Whack himself) unequivocally linked the drugs in the car to Whack. We therefore hold that a rational trier of fact could have found the essential elements of all of the relevant crimes beyond a reasonable doubt.

JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.